MASON and HOLMAN, Admr's. *v.* J. B. HOLMAN *et al.*

GIFT. *Advancement.* A father delivered to his daughter and her husband a slave without words of gift, and a year or two afterwards executed a deed of gift of the slave to the daughter to her separate use, which he proved and registered, but never delivered, retaining possession until his death when it was found among his papers, the daughter and husband having no previous knowledge of it, and the slave was emancipated by the war. *Held* that there was no valid gift, and that the daughter could only be charged with the hire as an advancement.

FROM ROBERTSON.

Appeal from the Chancery Court at Springfield. B. J. TARVER, Ch.

J. C. STARK and J. W. JUDD for complainants.

GARNER & SON for defendants.

COOPER, J., delivered the opinion of the court.

On September 27, 1876, J. C. Holman departed this life intestate. The complainants qualified as administrators of his estate, and filed this bill, among other things, for an account of advancements and distribution. In taking the account of advancements, the master charged Mrs. Smelser, a married daughter of the intestate, with $600 as the value of a girl slave given to her by her father in 1858; and charged Mrs. Taylor, another daughter, with $600 as the value of a similar slave advanced to her in 1859. The chancellor confirmed the master's report, overruling the exceptions of the daughters to these items, and the daughters and their husbands appealed.

The facts are that Smelser and wife, who lived in the State of Missouri, visited the intestate in 1858, and took home with them the negro girl, who remained with them until the spring of 1864, when she left them, being freed by the war. In like manner, Taylor and wife, who lived in the same county as their father, visited him in May or June, 1859, and returned home with the negro girl, whose value was charged to them as an advancement. The girl remained with them until the husband went into the Southern army. His wife then removed, with the girl, to the home of her husband's father, and remained there until her husband returned—about two years. The negro girl, after remaining about a month, seems to have been taken by Mrs. Taylor to her father's, and left there. The evidence is hopelessly in conflict on the

point, but the weight of it seems to sustain this view. When the husband returned home, he and his wife again took the girl, and she remained with them until sometime in 1865, when she left them, being then free. On the 24th of March, 1860, John C. Holman, the father, executed instruments in the form of deeds of gift for these slaves, one deed to each daughter for the slave previously given, acknowledged their execution, and had them registered, but retained possession. They were found among his papers after his death. In each of these conveyances he values the slave to the daughter at $600, and makes the conveyance to the separate use of the daughter. The daughters and their husbands deny all knowledge of these conveyances. They further deny that the original delivery was in the form of, or considered by them as a gift. Somewhat inconsistently, they testify that after the emancipation of the slaves, the father said he had intended to give each of his children a slave, but as the slaves had all been freed he would not charge the daughters with any advancement for the slave given to each of them.

The delivery and acceptance of a deed, although neither is required to be formal, are essential to its validity, and acknowledgment and registration alone, nothing more appearing, will not suffice: *Tompkins* v. *Bamberger*, 3 Lea, 579, and cases there cited. There is no evidence in the record to fix the appellants with knowedge of the written instruments signed by the intestate, nor with an acceptance of the slaves upon the terms of these instruments. The charge of the slaves

as advancements cannot, therefore, be sustained by those writings.

If the facts touching the taking and retaining possession of the slaves by the appellants be alone looked to, it would be difficult to resist the conclusion that the father intended to give, and the daughter and husband intended to receive the slave at the time of the original delivery, and that the latter continued to hold under the gift. The law would treat the gift as an advancement, and the registered instruments, although not operative as deeds, might, like any other memorandum of the father, be looked to as evidence of his intent to make an advancement, and of the value put by him upon it. But these instruments have another effect. They show, that up to their date the father considered himself as not having parted with the title or right of property in the slave, for he thereby undertakes to affix terms to the gift which would not necessarily accompany a parol delivery, and are not shown to have accompanied the delivery. In this view, there never was any parol gift by the father, and the gift by the written instruments never took effect for want of a valid delivery and acceptance. The acts or declarations of a father subsequent to a transaction by which he parts with the possession of property in favor of a child, may not be evidence against the child: *Merriman* v. *Lacefield*, 4 Heis., 215; *Rains* v. *Hays*, 2 Tenn. Ch., 672. But they are clearly admissible in favor of the child as to the true nature of the transaction. The writings show that the father did not intend to give, and did not

consider himself as having given to the husband and wife the slave absolutely at the time of the delivery. They further show that he was only willing to part with the title by vesting it in the daughter to her sole and separate use. The conveyances failing to effectuate his intent because of the want of delivery and acceptance, it follows, necessarily, that there never was any valid gift. Nor, so far as appears, was there ever any adverse holding, but a mere possession in accordance with the parent's wishes. Whether the case would have been presented to us in this light if the slaves had never been emancipated, is very questionable, but we can only act upon the facts and evidence as shown by the record under consideration. All that the appellants can be charged with as advancements in the matter of these slaves, will be the reasonable hire of the slaves while in their possession respectively.

The decree will be modified accordingly, and the cause remanded. The costs will be paid out of the assets of the estate.