JONES *et al. v.* JONES *et al.*

(*Knoxville,* September Term, 1947.)

Opinion filed December 8, 1947.

HOWARD E. WILSON, of Kingsport, and SIMMONDS & BOWMAN, of Johnson City for appellants.

TUCKER & ERWIN, of Erwin, for appellees.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The chancellor overruled the demurrer of the defendants, holding that the instrument in question was a valid deed.

The complainants are among the heirs of Everett (A. E. B.) Jones, who died intestate and without issue in Unicoi County on August 29, 1946. The bill charged that at the time of his death he was the owner of about 150 acres of land valued in excess of $20,000. The numerous defendants are other heirs of Everett (A. E. B.) Jones. The prayer of the bill is that the debts be paid; that the interest of the parties be determined; and that the land be sold for division, etc.

Josephine Constable and others demurred to that part of the bill wherein it is charged that Everett (A. E. B.) Jones was the owner of a certain tract of land described in a deed from his sisters, Susan Jones and Minnie Jones, dated September 11, 1941. The title thus challenged involves approximately one half of the entire acreage. The instrument is styled an "agreement" entered into between Everett (A. E. B.) Jones, Susan Jones and Minnie Jones. Susan Jones and Minnie Jones predeceased their brother, Everett (A. E. B.) Jones. Then follows the recital:

"That Whereas, the said parties hereto each own certain real property located in the 11th Civil District of

Unicoi County, Tennessee, all of which is joined together in such way as to make one farm which extends . . ."
(Then follows the description and source of title, the deeds referred to and incorporated by reference vesting title to about half the acreage to Everett (A. E. B.) Jones in fee and the remaining acreage to Susan and Minnie Jones as tenants in common.)

The recital continues:

"That in the purchase and maintaining of said land, each of the parties hereto has contributed, and the three parties hereto have been using the property jointly, each receiving such part of the receipts and benefits therefrom as he or she might desire. All of whom live in the same home and it is the desire of the three that the property be maintained as one farm and the home of the three or the survivor or survivors thereof, so long as they or any of them may live; and they have mutually agreed that the property shall be legally joined as one farm, and that neither shall convey or transfer the same or any part thereof without the consent of the other, and the same shall not be conveyed without the written agreement of the other. In other words, the said parties hereto have agreed and do by this instrument convey unto each other, the full and complete right to use and hold the property so long as each shall live, with the agreement that in the event of the death of either, the survivor or surviors shall take and hold the legal title to the property, and the last or survivor of the three shall have and hold the title to the whole property not theretofore sold or conveyed by the deed made as provided for above. The survivor of the three shall have the title to the whole remaining property, in fee simple."

One acre of the land is then described and dedicated

as a public cemetery, "known as the Jones Cemetery." Then follows:

"It is further agreed that all personal property, including money, notes, choses in action, household goods and furniture, and farming tools, stock and any other property owned by the parties hereto, shall likewise be mutual property, and upon the death of either, the same shall stand and be the property of the survivor or survivors, to be used and disposed of as they or any of them, as the case may be, shall elect."

The writing concludes:

"Now, therefore, in consideration of the premises, we the parties hereto each for himself executed this instrument for the purposes aforesaid and to the end that the title to the property described and referred to shall stand and be the property of the survivor or survivors in fee simple, upon the death of any of the three."

All three parties signed and acknowledged the instrument and it was duly recorded November 24, 1942.

■ The question presented for determination is whether the above instrument is a valid writing and constitutes a deed, or whether it is testamentary in its purpose and intended only to operate in *futuro* and must fail as a will or joint wills, the formalities required of wills being lacking. The instrument is unusual, and the draftsman did not follow the customary deed style of formal divisions. While this is true, we must look to the whole instrument to determine the intention of the parties.

The defendants contend that if any present estate was intended to be created, it must be a joint life estate with the fee simple to the ultimate survivor, and that so construed the deed is void for the reason that the grantor may not convey his own land to himself and others in joint tenancy, with right of survivorship.

■ It is true that at common law when the attributes of a technical joint tenancy resulted by operation of law, and not necessarily from the expressed intent of the parties, the unities of time, title, interest, and possession must have been present in order that the special estate be created. By section 7604 of Williams' Code the most important characteristic of joint tenancy—survivorship—has been abolished in this State, but under our holdings the statute does not abridge the right of the owner of property to expressly provide for survivorship by deed. Survivorship must now result from the terms of the grant rather than by operation of law. *McLeroy* v. *McLeroy*, 163 Tenn. 124, 40 S. W. (2d) 1027.

■ Since the enactment of the Code section above referred to, the common-law unities requisite to joint tenancy have become academic as applied to that estate, a tenancy in common resulting if no contrary intent is expressed, whether or not the unities are present. When the intent to establish an estate by survivorship is clear, the existence or nonexistence of the unities becomes immaterial upon the idea that the rule fails where the reason fails. The cases wherein the proposition that "a man may not convey to himself" is advanced, without exception, are cases where a technical joint tenancy was involved, and even in those cases the modern tendency is to refuse to thwart the intention with technical requirements. See Tiffany, Real Property, 3d Ed., Vol. 2, sec. 418.

■ In the present cause, looking to the instrument as a whole, it seems that the following was the intention of the parties: Everett (A. E. B.) Jones, owning in fee about one half of the farm, reserved a life estate and a remainder in fee contingent upon his survival of the other parties; and at the same time he conveyed a life estate

in his land to each of the others as well as a remainder to each in fee contingent upon their respective survivals. In the same manner his sisters, Susan and Minnie Jones, owning the other half of the farm in common, reserved and conveyed similar interests or expectancies, each to the other and each to Everett (A. E. B.) Jones, in their lands. The result accomplished is a joint life estate in the whole of the lands, with remainder in fee in each in the whole of the lands, contingent upon survival. The remainders created may be termed cross remainders. See Tiffany, Real Property, 3d Ed., Vol. 2, sec. 334.

In *Calloway et al.* v. *Witt et al.*, 21 Tenn. App. 74, 105 S. W. (2d) 123, a joint life estate was held to exist, be valid, and sufficient to support a remainder. The Court cited section 7602 of the 1932 Code to the effect that a remainder in fee is good even without a preceding estate in freehold.

The defendants rely on the case of *Hicks* v. *Sprankle*, 149 Tenn. 310, 257 S. W. 1044, which dealt with a situation in some respects similar to the instant cause. In that case a wife had attempted to create an estate by the entirety by deed of realty, forming a part of her separate estate, to herself and husband. The deed was executed before Chapter 26 of the Acts of 1913 was modified. Code 1932, sec. 8460. The Court said at page 315 of 149 Tenn., at page 1045 of 257 S. W.:

"While not good as a conveyance of the estate by entirety, under recognized rules of construction the conveyance should operate, as nearly as possible, to produce the effect intended by the parties."

Again, the Court said at page 317 of 149 Tenn., at page 1046 of 257 S. W.:

"Mrs. Taylor could not convey to herself, but her at-

tempt to do so would not vitiate the deed where there was a grantee capable of taking the title."

The above-quoted case dealt with an estate for which the same unities as for joint tenancies may be yet required as well as, at that time, the additional fictional unity of husband and wife. The deed contained no express direction for survivorship, using only the technical words in the *habendum* clause "as an estate by the entireties."

More material are decisions holding valid convey-ances to a grantee conditioned on his survivorship of the grantor, without mention of the technical requirements of joint tenancies. See annotation in 11 A. L. R., page 81, where several such cases are discussed.

The intrument considered in *Thomas* v. *Singer Sewing Machine Co.,* 105 Minn. 88, 117 N. W. 155, 156, contained this language:

"The intent of this deed being to convey to said second party all of said land in case he survive said first party; otherwise, said land to be vested in first party in case he survives said second party."

Mr. Chief Justice START, speaking for the Minnesota Supreme Court, said at page 156 of 117 N. W.:

"If, by the terms of the instrument, the right or interest passes at once, subject to a contingency over which the grantor has no control, it is a deed, and irrevocable, even though the enjoyment of the thing granted is postponed until his death."

■ ■ Further objection is made that the instrument evidenced no intention to convey title in *praesenti,* and hence must be held testamentary in character and fails because it lacks the formalties required in the execution of a will. In the instrument now before us this language appears:

"In other words, the said parties hereto have agreed and do by this instrument convey unto each other, the full and complete right to use and hold the property so long as each shall live, . . ."

Words could hardly have been more aptly chosen to describe the rights of life tenants given present enjoyment, and the repeated language that the ultimate survivor should have the title to the whole property in fee simple leaves no doubt that an irrevocable disposition was intended, alterable only by consent of all the parties. This instrument was acknowledged and registered, and was supported by the dedication of the cemetery and the disposition of all personal property with present rights of enjoyment; therefore on this demurrer its delivery may be presumed.

By an amendment to the demurrer it is insisted that the instrument in question, if given effect as a deed, must be nevertheless held void and of no effect, because it creates a "mutual spendthrift trust" contrary to law and public policy.

In support of this contention counsel rely on the case of *McArthur* v. *Faw,* 183 Tenn. 504, 193 S. W. (2d) 763. The contract there under consideration created a fixed and arbitrary value of stock, which might be less than the actual value at any given time at which the stock dealt with might be purchased by one party in the event of insolvency of the other. This arrangement was stricken down under section 7277 of Williams' Code, being a conveyance with actual intent to defraud. The purpose there was to give each party a possible preference over future creditors of the other; the below market mutual option permanently attempting to keep an estate to which creditors might have become entitled out of their reach.

 In the present cause there is a restraint only on voluntary alienation by any party without the consent of the others. The right of any creditor to reach the estate of his debtor is not attempted to be curtailed or impeded and remained unaffected. There is no attempt to create a trust for the benefit of the settlor or settlors to the exclusion of their creditors, and subsequent creditors could not complain that the arrangement resulted in a lessening value of any one interest to third parties through the conditions and contingencies created by the deed.

We are of opinion that there is no error in the decree of the chancellor and it is affirmed.

All concur.