JULIA ADKINS ELLISON, Appellant, v. GOLDIE GARBER et al., Appellees.—287 S. W. (2d) 564.

Eastern Section. November 8, 1955.

Petition for Certiorari denied by Supreme Court, February 3, 1956.

Boyce Griffith, of Jellico, and Anderson & Anderson, of Knoxville, for appellant.

Harry B. Brown, of Jellico, for appellees.

HALE, J. The controlling question in this case is, Does the evidence negate the presumption of delivery that attaches to registered deeds?

The complainant brought this suit to recover a 1/5th interest in three pieces of property in Jellico and to have such property sold for partition. It is her insistence that these properties were conveyed by the then owner A. Garber to his wife Ada (sometimes called Kate) Garber by three deeds dated and acknowledged July 7, 1926, and registered on July 9th following; that Mrs. Garber, the conveyee, died intestate on Sept. 8, 1932, leaving surviving her husband and five children, one of whom was Saul Garber, to whom complainant was married in 1938 and who died testate, a resident of Bell County, Ky., and without issue, on May 29, 1942, devising all his estate by general terms to complainant, who has since remarried; that after the execution of these deeds of July 7, 1926, A. Garber managed these properties as the agent of his wife, and that after her death he continued to occupy and control such properties by reason of his estate by curtesy therein until his death December 19,

1950, when the deeds in question were found in his lock box; that soon after the discovery of these deeds the probate proceedings on the will of Saul Garber in Bell County, Ky., were filed in the County Court of Campbell County and his will spread of record.

The proof of this foreign will was made on February 22, 1951, and on the same date the complainant instituted this suit.

Defendants were the children or grandchildren of the said Ada Garber, who would have taken by inheritance her property, except that the defendant Charley Angel is an outsider, who claims under a deed made to him by A. Garber in 1944 for one of the pieces of property in suit, which is tract one in the bill. Angel's deed is dated Oct. 11, 1944, and registered Oct. 13, 1944.

' Goldie Garber claims tracts two and three under the will of her father, consisting of a business property and a residence.

The defenses are that the deeds of July 7, 1926, from A. Garber to Ada Garber were never delivered; that the purported considerations named therein, viz., $5,000, $4,000, and $3,500, respectively were never paid; that the complainant had been guilty of negligence which would bar recovery; and that any right of action she had was barred and extinguished by Code, Secs. 8583 and 8584.

The cause was heard on depositions and exhibits. The Chancellor, in a very well reasoned memorandum opinion, found the evidence was sufficient to overturn the presumption of delivery created by the registration of these deeds, and, further, if mistaken in this, then by the deeds in question Mr. Garber deprived himself of any right of curtesy in these properties, so that the statutes of limitation began to run at the death of Mrs. Garber in 1932,

thus barring any right of complainant to recover. She has appealed and assigns errors.

In disposing of this question of delivery Chancellor Carden said:

"The first question to be determined is whether or nor the three deeds executed by A. Garber to his wife, Ada Garber, in 1926 were delivered. These deeds were registered. It must be assumed that they were registered by A. Garber.

"In the early case of McEwen v. Troost, 1 Sneed 186 [33 Tenn. 186], our Supreme Court said that where it appeared that the grantor directed a deed to be recorded we should consider that equivalent to actual delivery and acceptance.

"Later in the case of Thompson v. Jones, 1 Head 574, 576 [38 Tenn. 574], the Court expressed doubt as to whether the execution and registration constituted delivery and reached this conclusion:

" 'That the execution of the deed, and procuring its registration, would not be conclusive of delivery; but it would devolve upon the other side the necessity of proving that she did not intend it as a final delivery.'

"Then in the case of Mason and Holman v. Holman, 10 Lea 315 [78 Tenn. 315], the Court held that where the donor did register the deeds but recovered them back after registration and held them in his possession until death and that the donees knew nothing about the deeds, there was no delivery.

"In the case of Davis v. Garrett, 91 Tenn. 147 [18 S. W. 113], the Court held that when the grantor caused the actual registration of the deed, it constituted a prima facie case of delivery and that it should require strong circumstances to rebut the presumption of delivery. In

this case, the donee was an infant and the Court held that being such it was incapable of exercising any discretion as to acceptance. This seems to have been the distinguishing point between this case and the Holman case, supra.

"Later in the case of Battle v. Claiborne, 133 Tenn. 286 [180 S. W. 584, 589], the Court held as follows:

" 'But, passing this, we are satisfied from this evidence, which is, however, largely circumstantial, that Claiborne, the maker of this deed, delivered it to Col. Battle, and he delivered, or caused the deed to be delivered, to the register, and directed that it be recorded, and afterwards knew of its recordation and assented thereto. We also think Mrs. Battle, the grantee, assented to and claimed under the deed with knowledge that it had been so made and recorded. Under our cases this is sufficient evidence to warrant the conclusion that there was both delivery and acceptance of this deed, especially in view of the fact that there is no direct or circumstantial evidence tending to show the lack of delivery or acceptance.'

"Then in the case of Couch v. Hoover, 18 Tenn. App. 523 [79 S. W. (2d) 807], and in a long line of cases including the late case Cox v. McCartney, 34 Tenn. App. 235, 236 S. W. (2d) 736, our Appellate Courts have held that the delivery of a deed is essential to its validity and that delivery is a matter of intention manifested by conduct, words, and acts of the grantor and that it is to be inferred from all the circumstances appearing.

"We start then with a prima facie case of delivery because of the registration.

· "Complainant introduces no other proof on this point.

"The defendants show by their proof that the three

deeds in question were found in the lock box of A. Garber pursuant to his death; that they were in the very bottom of said box and underneath a great number of other papers; that said deeds were not among the valuable papers of Ada Garber when she died in September 1932. In this connection, Judge Brown testified that he prepared the deeds for A. Garber, delivered them to him and never saw Mrs. Garber. As to Tract One, A. Garber acquired this property in 1925. He paid the taxes and insurance and upkeep on the building. In 1932, beginning in January, and until April 10, 1944, he rented this building to Charley Angel, receiving rental checks himself. Mrs. Ada Garber did not die until September 8, 1932, or some eight months after he started renting to Angel and receiving the checks.

"As to Tract Two, A. Garber acquired this property from S. B. Wender and wife by deed of January 9, 1918. Thereafter he used it for a store building where he was engaged in a retail business. He paid all taxes and insurance and upkeep on this building. Later, in 1935, after the death of his wife, he acquired a building adjoining this building and removed the wall between the two buildings so as to enlarge his retail department store.

"These properties were at all times insured in his name; then in 1943 he leased the store building to one Tepper. Later he leased this building to one Sturm. In 1942 he made a will in which he recognized this property as his own and devised it to the defendant, his daughter Goldie. As to Tract Three, this was the family home which was acquired by deed to A. Garber and his wife Katie Garber (also known as Ada Garber) of June 1921. A. Garber and his wife and their daughter Goldie and probably other members of the family lived in this property until the death of his wife in 1932 and thereafter

he and his daughter Goldie occupied it as their residence. He also paid taxes and upkeep, etc., on this property.

"The first knowledge that any of the children had of these three 1926 deeds was when their father's safety deposit box was opened after his death in 1950.

"Complainant's deceased husband, Saul Garber, died in 1942, in the State of Kentucky. She probated his will there and wound up his estate and made no claim that her deceased husband had any interest, remainder or otherwise in the properties involved herein. Saul Garber lived some ten years after his mother's death and he likewise made no claim. Never did Mrs. Ada Garber make any claim to these children or apparently to any other person that her husband had conveyed these three pieces of property to her.

"I think from all of the facts and circumstances surrounding these transactions that a fair inference would be that Mrs. Ada Garber never knew that her husband had executed these three deeds.

"I think a fair inference would be that A. Garber himself placed these deeds in the very bottom of his safety deposit box probably at the time when he acquired the box and thereafter he placed the many other papers in said box and on top of said deeds and that he himself overlooked the fact that he had ever executed said deeds. Certainly this must have been true when he made his will and when he made the various leases in which he claimed to be the sole owner. Had he destroyed the deeds, in all likelihood the registration would never have been discovered and this suit would not now be before the Court.

"I am, therefore, of the opinion, from all the circumstances, that there was no delivery of these three deeds.

"Each case must stand upon its own peculiar facts

and circumstances and I think that the facts and circumstances surrounding these deeds justify this finding.''

The reason for the signing of these deeds is a complete enigma. It was done by Mr. Garber when his wife was not present. He caused their registration. The next time the deeds were seen was after his death, when as stated they were found in the bottom of his lock box. So far as this record shows they were never in the possession of Mrs. Garber. Neither of these parents ever mentioned to any of the children anything about the deeds; all were surprised when they were discovered in his lock box. Some, if not all, of the children were living with them in 1926 and continued to do so until they married or moved to engage in business of their own, with the exception of Miss Goldie Garber who continued to live with her parents until the death of Mrs. Garber and then with her father until his death. She testified she never saw the deeds or knew anything of them until found as aforesaid. She was virtually raised in the store operated by her father and was evidently very close to him.

After these deeds were placed of record matters continued exactly as before. These properties were assessed in the name of Mr. Garber, he paid the taxes thereon, collected the rentals and used them for his own purposes. The insurance thereon was kept in his name, which has more than ordinary significance because it is shown that he was an experienced and successful business man, leaving a considerable estate accumulated by his own industry and thrift, in spite of the fact that he was born in Russia and came to America when a young man, thus laboring under some handicaps of language.

Likewise it is shown that he was honorable and upright in his dealings. It would have been utterly incompatible with his character for him to have sold defendant

Angel the property purchased by him for the sum of $5,500 when he had no title thereto.

Nor would an honest and upright man have undertaken to devise tracts "two" and "three" to his daughter, Goldie, who had stood by him all her life, and whom he intended to favor to this extent, if he had considered that the deeds of 1926 had been completed by delivery.

In short, every act of Mrs. Garber, so far as shown by this record, indicates she did not know of these deeds and made no claim to these properties. On the other hand, every act of Mr. Garber was consistent with non-delivery and inconsistent with delivery; thus indicating an incompleted purpose.

It is intimated that the signing of these deeds was due to the fact that on March 2, 1926 (some four months prior to their signing), the Jellico Bank & Trust Co. was put in the hands of a receiver as insolvent; that Mr. Garber, being indebted to this bank in some amount not shown, made these conveyances for the purpose of defeating his obligations. However, it is shown that he paid "every cent" of what he owed, although forced to do so by installments, a not uncommon thing for a business man who is suddenly called upon to meet an obligation. There is no evidence that he ever used these deeds as a lever to obtain any special consideration in the handling of his obligations.

If we suppose fraud in this particular, inchoate as it may have been, then on the other hand we might suppose that Mrs. Garber was unable to raise the considerations of $5,000, $4,000 and $3,500 mentioned in the deeds in question, and for that reason the proposed transaction was not completed. True it is that she was shown to be a homebody and owned no property at her death. But she may have been anticipating borrowing it from a relative.

Of course this is somewhat fanciful, but no more fanciful than to impute fraud to Mr. Garber, when every act indicated his desire and intention to pay his debts.

After all, we have simply a question of fact; the principles of law being well established, as pointed out by the Chancellor in the opinion before quoted.

■■ As was said in Wigmore on Evidence, 3rd Ed., Vol. 9, Sec. 2408, page 26:

"Even the grantor's conduct in surrendering the document to an official for *registration* or *recording* does not of itself and invariably complete the act, though it is of course a strong circumstance of presumption.

"There is, therefore, no invariable mark of finality for a deed—whether it be the act of writing, or of sealing, or of manual delivery, or of the public recording. Subject to certain usual presumptions of conduct, the circumstances in each case must control."

■ We agree with the Chancellor that the presumption of delivery caused by the registration of these deeds is overturned by the fact disclosed by the record in this cause.

■ It is argued that Mr. Garber fraudulently concealed the cause of action, in that he never revealed to any of his children his execution of these deeds. While this primarily has to do with the question of the applicability of the statutes of limitation (which is hereinafter pretermitted by us) we might point out that this is consistent with his belief of nondelivery. Further, was his wife a party to this conspiracy of silence? If she knew of the execution of these deeds and claimed any interest in these properties, why was she silent?

The conclusions we have arrived at make it unnecessary to decide the question of Mr. Garber's right to curtesy as affecting the statutes of limitation, and these matters are expressly pretermitted.

The decree below holding the deeds in question were never delivered and that complainant has no right to the properties therein described is affirmed at the cost of appellant and sureties on appeal bond.

Affirmed.

McAmis, P. J., and Howard, J., concur.