**Irene BRIGHT, heirs being Kathleen Bivens, et al., Plaintiffs-Appellees,**

**v.**

**Michael Anthony BRIGHT, Defendant-Appellant.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Dec. 9, 1986.

Application for Permission to Appeal Denied March 9, 1987.

J. Lewis Kennard, Madisonville, for plaintiffs-appellees.

Kendred A. White, Madisonville, for defendant-appellant.

CRAWFORD, Judge.

The decree of the trial court declared a deed absolute on its face to be a conveyance in trust. Michael Anthony Bright, the grantee defendant appeals and presents for review the sole issue of whether the trial court erred in so holding.

Irene Bright, a widow with 13 children died intestate on April 16, 1985. Defendant and his brother Carl Bright are Mrs. Bright's grandchildren and were reared by Mrs. Bright. Defendant had lived with Mrs. Bright all of his life and was living with her at the time of her death. The subject of the litigation is approximately 240 acres of land in Monroe County upon which Mrs. Bright maintained her home. The warranty deed in question was executed on February 6, 1985, and conveyed the entire tract of land to defendant in fee simple. Subsequent to Mrs. Bright's death, suit was brought by three of the children ostensibly for the use and benefit of all the heirs seeking to set aside the warranty deed from Irene Bright to defendant. The complaint alleges that the deed was contrary to Irene Bright's express wishes, that she was not able to execute such a legal document at the time of its execution, and that if she did in fact execute the document it was because of undue influence and not a product of her own will. The complaint prays that the deed be set aside and declared void and of no legal effect. Defendant's answer joins issue on the material allegations of the complaint and avers that the deed expressed Irene Bright's intentions and that she was competent to act in her own behalf. The answer specifically denied any undue influence. Various other children of Irene Bright by way of cross-claim also pray that the conveyance be set aside and that the court adjudge the Irene Bright heirs as owners of the real estate described.

At the conclusion of the nonjury trial, the court allowed plaintiffs to amend their complaint to pray for a reformation of the deed and that it be declared to be an instrument of trust. The decree from which this appeal is taken provides:

This cause came on to be heard before the Honorable Earl H. Henley, Chancellor, at Madisonville, Tennessee, on the 16th day of January, 1986, upon the complaint, the answer of the Defendant and the submission of jurisdiction heretofore filed, testimony of witnesses, statement of counsel and at the completion of proof, Plaintiffs asked leave of the Court to amend the Complaint to pray for a reformation of the Irene Bright deed or construction thereof, and that it be held to be an instrument of trust, and such motion appearing to be proper the Court did and does hereby allow the amendment. The cause came on for further hearing and argument of counsel after which the Court advised the parties the matter would be taken under advisement and thereafter, the Court issued a Memorandum Opinion, dated January 28, 1986 which is made a portion of this Order as exhibit A.

It is, therefore, ORDERED, ADJUDGED, AND DECREED, that the deed from Irene Bright to Michael Anthony Bright, dated April 6, 1985, recorded in W.D.•Book 173, page 113, in the Register's Office for Monroe County, Tennessee, is conveyed in trust for the use and benefit of her thirteen (13) children and two (2) grandchildren, and that they are the owners of a one-fifteenth (1/15th) undivided interest each in the property of Irene Bright, subject to the equity of Floyd Bright which is reserved for further determination of the Court. The names of the parties are as follows:

Isabelle B. Millsaps
Floyd Bright
Kathlenn B. Bivens
Lloyd Bright
Reed Bright
Ray Bright
Jeanette B. Duncan
Edna B. Harris
Clifford Bright
Clifton Bright
Garnet B. Woodward
Charlotte B. Watson
Florine B. Stricklan
Carl Bright
Michael Anthony Bright

The evidence at trial reveals the following:

The defendant, called as an adverse party by plaintiffs, testified that prior to February, 1985, his father, Floyd, son of the deceased, attempted to get the deceased to sign a deed conveying a portion of the property involved to him, but she would not do it. He related that in discussions concerning her property she said that she wanted to keep it together, and Mike [defendant] should get a deed for all of it. He testified that she requested that he arrange for such a deed, and he went to an attorney to have the deed prepared. On February 6, 1985, he brought the deed to the deceased at their home. A notary public was present, and she duly executed the deed and gave it to him. He stated that he locked the deed in his room and did not have it recorded until June 18, 1985, two months after her death in April, 1985.

The notary public testified concerning the execution of the deed and stated that the deceased did not read the deed in his presence nor was anything explained to her while he was present. He said that she did sign the deed and acknowledged her signature. He was aware that she was ill and had recently been in the hospital.

Garnett Woodward, one of the deceased's daughters, testified that her mother told her approximately a month before her death that "they" had been trying to make her sign a paper and that her mother was taking a great deal of medication during her last illness. She further testified that she found out about the defendant having a deed to the property about the time of the funeral and that right after the funeral there was a discussion among most of the children while the defendant was present concerning an equal division of the property. Defendant made no comment to the group that he was already the owner of the property. She testified that the defendant told her that the deceased gave him the place so that it would not be sold, and it would give them a chance to get everything properly divided.

Kathleen Bivens, another daughter of deceased, testified that her mother had told her prior to her death that she wanted her children treated equally. She testified that her mother was in ill health and told her that "they" were trying to make her sign a deed.

Jeanette Duncan, another daughter of deceased, testified that she found the deed for part of the property that Floyd Bright had had prepared, and that at her mother's direction she destroyed it. She further testified that defendant told her that he was going to register his deed and that he was going to put everyone's name on the property so they would all have an equal share.

Charlotte Watson, another daughter of the deceased, also testified that her mother told her there was a paper "they" were trying to get her to sign. She corroborated the testimony concerning a conversation on the day of the funeral regarding division of the property.

The defendant testified in his own behalf that he was instructed by the deceased to have the warranty deed prepared, that it was prepared, and that it was presented to her for signature in their home in the presence of the notary public. He believed that she was competent at the time, knew what she was doing, and that there was no force nor any threats nor any other type of coercion involved. Defendant also presented Edna Harris, another daughter, as a witness in his behalf. She testified that she lived about a quarter of a mile from her mother and that after her mother's hospitalization in January, 1985, her mother stayed in Edna's house until she was well enough to return home. She states that on February 6, 1985, she went to her mother's home after she saw the notary public there, and we quote her testimony concerning this occasion:

Q. I would ask you if you saw Wayne Bivens there that morning.
A. Yes.
Q. Was he leaving or coming?
A. He was standing in the yard talking to Mike.
Q. All right. And did you go on in the house where your mother was?

A. Yes.

Q. Did you have—did your mother, in giving her her breakfast, there—did you have any discussion with her about what she might have just done?

A. She told me what she had done.

Q. Tell us what she told you there on the 6th of February.

A. She said, "I signed a deed to Mike." She said, "Do you think Mike will be fair to people if they got out of a place to live, or anything? Do you think he would be fair in letting them come and live on the place?"

I said, "I don't know," because I didn't want to discuss it with her.

Q. That's what she told you?

A. That's what she told me.

Q. That she'd just signed a deed; is that right?

A. Yes. She told me to keep my mouth shut about it—that the family members—most of them wouldn't even come to see her any more if they knew she signed a deed.

I promised I wouldn't, and I didn't say a word to them about it.

■ In order for a deed to be valid, it must be the conscious, voluntary act of the grantor, and a deed executed when the grantor is mentally unbalanced, has no intelligent comprehension of the performance of the act, and is incapable of transacting is void. *Hinton v. Robinson*, 51 Tenn.App. 1, 9, 364 S.W.2d 97, 100 (1962). There is no question that the decedent was seriously ill with emphysema and had been hospitalized shortly before the execution of the deed. However, the proof indicates that although the decedent was in a weakened physical condition she maintained her strong will and had her mental faculties about her at all times. The evidence just does not support plaintiffs' claim that the deceased did not understand the nature of her act.

Plaintiffs allege in their complaint that undue influence was exerted by the defendant which resulted in the gift to him. The doctrine of undue influence applies when one party, such as the grantee, is in a position to exercise undue influence over the mind and the will of another, such as a grantor, due to the existence of a confidential relationship. It is significant to note that only *undue* influence is prohibited. *Parham v. Walker*, 568 S.W.2d 622, 624 (Tenn.App.1978). The burden is on the one who claims the existence of a confidential relationship to prove it. *In Re Estate of Rhodes*, 222 Tenn. 394, 406, 436 S.W.2d 429, 435 (1968). *Parham*, 568 S.W.2d at 624.

In *Kelly v. Allen*, 558 S.W.2d 845 (Tenn. 1977), the Supreme Court said:

the normal relationship between a mentally competent parent and an adult child is not *per se* a confidential relationship and raises no presumption of the invalidity of a gift from one to the other. In order for such a presumption to arise there must be a showing that there were present the elements of dominion and control by the stronger over the weaker, or there must be a showing of senility or physical and mental deterioration of the donor or that fraud or duress was involved, or other conditions which would tend to establish that the free agency of the donor was destroyed and the will of the donee was substituted therefor. In such cases the rules require the application of the presumption and the rule of independent advice comes into play.

*Id.* at 848.

■ From our review of the record in this case, the proof falls far short of showing any confidential relationship or any undue influence exercised by the defendant over the deceased. The chancellor's memorandum opinion does not address plaintiffs' allegation of undue influence, but his opinion merely finds "that it was the decedent's intent in making this conveyance that the property be held by the defendant in trust for all of the heirs." It is implicit from this finding that the chancellor found no undue influence. This brings us to the question of whether the evidence preponderates against the trial court's findings that the deed in question, absolute on its face, was intended to be a conveyance in trust.

In *Mee v. Mee*, 113 Tenn. 453, 82 S.W. 830 (1904), the Court said:

if the deed, upon its face and by its terms, is absolute, and conveys to the grantee a fee-simple estate, without more, the trust character can be shown by parol, because this would not in any way contradict the terms of the deed. *Id.* 113 Tenn. at 455, 82 S.W. 830.

In the case before us, there was no exclusion of parol evidence introduced in an effort to prove that the decedent's conveyance to the defendant was in trust for the benefit of her heirs. Furthermore, the record reflects no objection by the defendant to the admission of parol evidence. We view the real problem in the case to be the quantum and quality of the parol evidence.

In *Tansil v. Tansil*, 673 S.W.2d 131 (Tenn.1984), Justice Fones, speaking for the Court in finding that the proof did not establish an oral trust, said:

> We reaffirmed the long-standing rule that governs this case in *Sanderson v. Milligan*, 585 S.W.2d 573 (Tenn.1979), as follows:
>
> [t]his court has consistently recognized that a trust may rest upon a parol agreement where the declaration of trust was made prior to or contemporaneous with a transfer, either by deed or by will, of an interest in realty. *See Brantley v. Brantley*, 198 Tenn. 670, 281 S.W.2d 668 (1955); *Hunt v. Hunt*, 169 Tenn. 1, 80 S.W.2d 666 (1935); *Mee v. Mee*, 113 Tenn. 453, 82 S.W. 830 (1904); *Linder v. Little*, 490 S.W.2d 717 (Tenn.App.1972); *Kelley v. Whitehurst*, 37 Tenn.App. 360, 264 S.W.2d 1 (1953). As a safeguard against fraud, the trust, and its terms must be proven by evidence that is clear, cogent, and convincing. *Hunt v. Hunt, supra; Linder v. Little, supra. Id.* at 574.
>
> \*   \*   \*   \*   \*   \*
>
> There is a great variety of expression among the states as to the degree of parole proof required to establish such a trust, but the courts are so uniformly reluctant to engraft an oral trust upon the legal title to real estate, evidenced by a written instrument absolute on its face, that all require a high degree of proof. The variations in expression appear to be rather insignificant. The words "clear" and "convincing" with varying combinations of third and fourth words are the most frequently used.

*Id.* at 132.

In the case before us, there is no clear, cogent, and convincing evidence that the decedent made a declaration of trust prior to or contemporaneous with the execution of the deed in question. There is absolutely not one scintilla of proof of the terms of any such alleged trust. *Tansil* places the burden on the plaintiffs to show by clear, cogent, and convincing proof *the trust* and *its terms*, and this they have failed to do.

Accordingly, the judgment of the trial court is reversed and plaintiffs' complaint is dismissed. This case is remanded to the trial court for such further proceedings as are necessary, and costs of appeal are assessed against the appellants.

TOMLIN, P.J. W.S., and FARMER, J., concur.