Deborah SMALLING, Plaintiff–Appellant,

v.

Martha TERRELL and Wade Terrell Donaghey, Defendants–Appellees.

Court of Appeals of Tennessee, Eastern Section.

Nov. 22, 1996.

Application for Permission to Appeal Denied by Supreme Court April 7, 1997.

Sharon G. Lee, Lee & Tallent, Madison-ville, for Plaintiff-Appellant.

J. Lewis Kinnard, Madisonville, for Defendants-Appellees.

## OPINION

SUSANO, Judge.

This litigation focuses on the ownership of 36 acres of farmland in Monroe County. The plaintiff claims that she is the fee simple owner of the property by virtue of the holographic will of William P. Avery, the man with whom she lived from 1980 until his death by suicide on May 28, 1994. The trial

court held that a two-acre tract,[1] including a house, passed absolutely to the plaintiff under the terms of the will, but that the remaining 34 acres "passed under [a] resulting trust to the defendants." The plaintiff appealed, arguing that the trial court erred in finding that a resulting trust was created with respect to the 34 acres.

The defendants' position on this appeal is best illustrated by the following language in their brief:

> [The defendants are] in a unique position in this case, agreeing with the Chancellor as to the result, but disagreeing with the Court as to the route for reaching his conclusion.

> [The defendants'] position is that under the evidence submitted at the original hearing, the Trial Court should have concluded that the will of William P. Avery should have been construed to pass the home where he lived with the Appellant, along with his personal property and a 2-acre tract upon which the house was located, to the Appellant, and that the balance of his estate should pass by intestate succession to his grandmother, Martha Terrell.

### I. Procedural History

The plaintiff, Deborah Smalling, filed an action for declaratory judgment asking the court below to construe Mr. Avery's holographic will. She named as defendants Mr. Avery's 95-year old maternal grandmother, Martha Terrell, and his 75-year old aunt, Wade Terrell Donaghey.[2]

The defendants filed their answer, which asserted, among other things,

> that the parties defendant have over the years assumed that the conveyance to William P. Avery [from his mother, Peggy T. Avery] was a conveyance in trust for the use and benefit of all the members of the family, since all the family resides on the property and William P. Avery was the youngest and only male member of the family, and that [Peggy T. Avery], his

---

1. This tract is not otherwise identified in the trial court's judgment; but there is nothing in the record to indicate that the 36-acre tract was ever subdivided.

2. The defendants' ages are as of November 28, 1995, the date of the last hearing below.

mother, was suffering from terminal cancer, which took her life prior to his.

On May 22, 1995, the trial court conducted a non-jury hearing. The only witnesses were the plaintiff and Wade Terrell Donaghey. The transcript is only 37 pages in length. Following that hearing, the trial court announced from the bench that he thought that all of the 36 acres passed under Mr. Avery's will. He expressed this caveat:

> It's before me on the interpretation of a will. I think that the property passes under this will. But I don't feel that it would be right for me to say this is an interpretation of the will which would preclude this lady from pursuing an action for a resulting trust or maybe some kind of a compromise.

The Chancellor then indicated that he would permit the defendants to amend their answer to add a counterclaim seeking a declaration that 34 acres passed subject to a resulting trust in their favor. This the defendants did on July 20, 1995. The plaintiff joined issue on the counterclaim, and a further hearing was conducted by the trial court on November 28, 1995. Only Ms. Donaghey testified at the second hearing. Her testimony spans only eleven pages of transcript.

At the conclusion of the second hearing, the trial court took the matter under advisement, subsequently rendered a memorandum opinion, and thereafter entered a judgment finding a resulting trust as to 34 of the 36 acres.

## II. *Facts*

The evidence, meager though it is, proved facts that are not in serious dispute. In 1972, Peggy T. Avery bought 36 acres of farmland in Monroe County. In order to finance the purchase of that property and other property[3], she borrowed $32,500 from the Federal Land Bank.

Ms. Avery and her teenage twin boys, Phil and William, moved into the residence on the 36 acres. Ms. Avery's mother, Martha Terrell, moved with them.

The plaintiff moved in with William P. Avery in 1980. William P. Avery and the plaintiff later built a house on the property, utilizing their wages and savings. They moved into the newly constructed house in 1989.

William's twin brother, Phil, also started a house on the property, but he died before it could be completed.

Ms. Avery was survived by her sister, Wade Terrell Donaghey, who lived in California until her retirement in 1985. Because of Ms. Avery's financial problems, Ms. Donaghey, beginning in 1981, made her sister's mortgage payments to the Federal Land Bank. When she retired, Ms. Donaghey returned to Monroe County, taking up residence with her sister and the others on the 36–acre tract of property.

■ Following her son Phil's death, Ms. Avery executed a warranty deed to her surviving son of a "one-half (½) undivided interest for the purpose of creating a tenancy in common, with the right of survivorship" in the 36–acre tract. The deed was executed August 4, 1988, and recorded the next day.[4]

Peggy T. Avery died in October, 1993. Her son, William P. Avery, committed suicide the following year. The plaintiff and Mr. Avery were living together at the time of his death. They had never married.

Following Mr. Avery's death, the plaintiff discovered his holographic will in their residence. It provides as follows:

> 1–19–93
>
> I would like Deborah to have my home and property to maintain and keep with the hope that she may find the comfort and independence that has been denied me. She has been my love and faithful consort and has given me untold support and happiness. Words fail me.
>
> /s/ William P. Avery

---

**3.** The other property was apparently sold during Ms. Avery's lifetime.

**4.** The appellees incorrectly argue that there is no evidence that Mr. Avery was ever aware of the deed. Recordation gives rise to a rebuttable presumption of delivery. *Ellison v. Garber*, 39 Tenn.App. 668, 287 S.W.2d 564, 568 (1955).

This is my true will and testament reaffirmed today, my mind is clear as is my intent.

3–24–93

/s/ William P. Avery

Dec. 24, 1993 One g__ d__ f____ up year. Deb's been more faithfull [sic] and supportive than I could ask and of course this document is my true will.

Mr. Avery's will was admitted to probate in solemn form on December 9, 1994. Prior to that date, Mr. Avery's grandmother, Martha Terrell, deeded the same 36–acre tract of land to Ms. Donaghey. The deed is dated August 4, 1994. It was recorded the next day. Like the earlier deed to Mr. Avery, it is a deed absolute on its face. It recites that Mr. Avery died intestate, leaving Martha Terrell "as his sole heir at law."

Ms. Donaghey testified that she made the mortgage payments to the Federal Land Bank from 1981 up to the time of trial, including a payment of $157.06 for the month of November, 1995.[5] She proved mortgage payments totaling $32,200. She also submitted evidence that she had paid taxes on the property totaling $3,824.16 for the period 1983–1994. In 1986, Ms. Donaghey borrowed $5,000 and put a new well on the property.

Ms. Donaghey did not pay rent as such during the time she resided with her family on the farm.

Ms. Donaghey did not file a claim against Mr. Avery's estate for any of the payments made by her. By the same token, there is no proof in the record that she filed a claim against her late sister's estate.

### III. *Law*

■ This court has cited with approval the definition of a resulting trust found in Gibson's Suits in Chancery, § 382 (Inman, 7th Ed.1988):

Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or

assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called *presumptive* trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions. They are, however, generally called *resulting* trusts, because the trust is the result which Equity attaches to the particular transaction.

*Id.* (Emphasis in original). *See Estate of Wardell ex rel. Wardell v. Dailey,* 674 S.W.2d 293, 295 (Tenn.App.1983). A court's power to declare a resulting trust applies to real property as well as personal property. *Id.* "To establish a resulting trust upon land, it is a general principle that the trust must arise at the time of the purchase, attach to the title at that time and not arise out of any subsequent contract or transaction." *Livesay v. Keaton,* 611 S.W.2d 581, 584 (Tenn. App.1980).

■ It is the nature of resulting trusts that they are normally established by parol evidence. *Estate of Wardell,* 674 S.W.2d at 295; *Bright v. Bright,* 729 S.W.2d 106, 110 (Tenn.App.1986).

■ A resulting trust is a judge-formulated "creature" by which the judicial authority is able "to reach an interest in property belonging to one person yet titled in and held by another." *Wells v. Wells,* 556 S.W.2d 769, 771 (Tenn.App.1977). We have held that the underlying principle of all resulting trusts is the equitable theory of consideration, i.e.,

that the payment of a valuable consideration draws to it the beneficial ownership; that a trust follows or goes with the real consideration, or results to him from whom the consideration actually comes; that the owner of the money that pays for the property should be the owner of the property.

*Livesay,* 611 S.W.2d at 584 (citing *Greene v. Greene,* 38 Tenn.App. 238, 272 S.W.2d 483, 487 (1954)). "[A] resulting trust arises, if at all, from the fact of payment of the consider-

---

**5.** There was a balance due on the mortgage debt of an unspecified amount at the time of the

hearings below.

ation by the *cestui que* trust, and not from any agreement of the parties." *Livesay,* 611 S.W.2d at 584.

> Strict proof of a resulting trust is required: ... when one attempts to create a resulting trust on the basis of parol evidence, such a trust must be shown by more than a mere preponderance of the evidence. (citations omitted). Instead, "[w]hile an implied or resulting trust may be established by parol evidence, yet both upon reason and authority the courts will not enforce it, unless it be established by the most convincing and irrefragable evidence. In other words, it must be sustained by proof of the clearest and most convincing character. To sustain a resulting trust upon parol evidence in the teeth of the terms of the written instrument, it is not essential that the evidence be of a character to remove all reasonable doubt, but only that it be so clear, cogent and convincing as to overcome the opposing evidence, coupled with the presumption that obtains in favor of the written instrument."

*Estate of Wardell,* 674 S.W.2d at 295 (quoting from *Savage v. Savage,* 4 Tenn.App. 277, 285 (1927)).

## IV. *Analysis*

As· previously indicated, the appellees' brief questions the "resulting trust" rationale adopted by the trial court. While arguing that a finding of a resulting trust is preferable to an outright finding in favor of the appellant, they urge us to take another approach—to find instead that Mr. Avery intended to pass to the plaintiff only "a 2–acre tract upon which the house was located." They ask us to hold that the remaining 34 acres passed to Mr. Avery's grandmother by *intestate succession,* and then to Ms. Donaghey in fee simple by virtue of the deed to her from the grandmother. They argue that the will should not be construed to pass all of the 36 acres.

■ In construing Mr. Avery's will, we are bound to follow the "cardinal rule" in will construction cases:

> the court seeks to discover the intention of the testat[or] and to this rule all other rules of construction must yield.

*Lewis v. Darnell,* 580 S.W.2d 572, 574 (Tenn. App.1978). In construing a holographic will, it is our duty "to give more liberality toward the construction of the instrument." *Id.*

■ The will in this case expresses the testator's intent that the plaintiff "have my home and property." The appellees contend that with respect to Mr. Avery's real property, this provision only means his house and two acres. We do not understand how the appellees can interpret "home and property" narrowly to only include two acres of ground. This interpretation is no more reasonable than one that finds a gift of one acre, or five acres, or any other acreage less than the full 36 acres.

■ "Tennessee common law ... embodies an expansive view of property." *State ex rel. Elvis Presley v. Crowell,* 733 S.W.2d 89, 97 (Tenn.App.1987). "Property" is said to include "all rights that have value." *Id.*

■ We know of no reason to interpret the word "property", as found in Mr. Avery's will, in a narrow fashion. His very warm feelings toward the plaintiff, as expressed in his own hand, are abundantly clear on the face of the instrument. There is nothing about those feelings that is inconsistent with an unconditional passing of all of his property; on the contrary, they are totally consistent with such an expansive gift. It should also be noted that the will does not purport to pass any of his property to anyone else. Our holding is also consistent with the strong presumption that a person who leaves a will does not intend to die intestate as to any of his or her property. *Brundige v. Alexander,* 547 S.W.2d 232, 236 (Tenn.1976); *Williamson v. Brownlow,* 219 Tenn. 464, 410 S.W.2d 878, 880 (1967).

We find the appellees' argument that the will, on its face, only passes two acres of ground to be contrary to the weight of the evidence. We therefore reject it.

■ We also find that the evidence preponderates against the trial court's findings that the deed, absolute on its face, from Peggy T. Avery to William P. Avery only conveyed two of the 36 acres in fee simple

and that the balance "passed under the resulting trust to the defendants." Rule 13(d), T.R.A.P. As opposed to the appellees' main argument, the trial court concluded that "property" as that term was used in the will included all of Mr. Avery's property *that he could pass in fee simple.* The trial court concluded that 34 of the 36 acres did not pass in fee to Mr. Avery by virtue of the deed from his mother, and hence could not pass unconditionally under the will. We disagree.

We do not believe this is an appropriate case for the imposition of an equitable trust. There is no proof that any payments made by Ms. Donaghey were intended by her to extract an interest in any part of the 36–acre farm. Furthermore, there is nothing in the record to indicate that she expected to receive an interest in the property by virtue of the mortgage payments, the tax payments, or the money expended by her for the digging of the well. The best evidence of this is her own testimony. She testified that she was with her sister when she went to the office of attorney J. Lewis Kinnard to execute the deed to her son William:

Q Were you aware that that deed was being executed?

A Was I aware?

Q Yes.

A Yes, I was aware of it.

Q Do you remember any of the details about it?

A Nothing except my sister just wanted to do it because otherwise the farm would have been split half and half between the twin sons and since one of them had been killed she wanted the other one to have it all. That's all. She wanted to do it so that if anything ever happened to her, you know, he wouldn't have any problems.

Q Were you present when—

A Yes.

Q —it was actually done?

A Yes.

    *    *    *    *    *    *

Q You knew your sister was making this deed.

A Oh, yes. Yes, I was with her.

Q You went with her.

A Yes.

Q And did you voice any objection to the deed—

A No, I did not.

Q —as it was written?

A No.

Q And so you knew the property was being conveyed absolutely to—

A To Bill—

Q —Bill.

A —her son. Yes.

Q Well, she conveyed one-half interest for the purpose of creating a tenancy in common with right of survivorship. It was her desire that he would have this at her death. Is that correct?

A That's right, yes.

Q Because she had no other children living.

A No, no other children.

Q And he was her sole heir. Did you object to the deed?

A No, I didn't object to it.

This testimony is totally inconsistent with any thought by Ms. Donaghey that her payments on the various obligations would result in a beneficial interest in any of the 36 acres. Her payments clearly were not consideration for the transfer of any of the acreage. The facts do not give rise to a trust at the time Ms. Avery deeded the property to her son. There is no testimony in the record that Ms. Avery ever said anything to indicate that she wanted any of the property to go to her mother or sister. Furthermore, there is nothing in the record to give rise to a presumption that Ms. Avery intended that her son would hold the property in trust for the defendants. Certainly, a trust is not made out by clear and convincing evidence.

Ms. Donaghey made it clear in her testimony that she made the various payments because her sister needed her financial help, and not because she expected an interest in the land:

Q All right. Had you had any dealings with them as far as the [36–acre tract] is concerned prior to 1986?

A  Yes.  I have made payments, made the payments on the farm since 1981.  December of 1981 I started making the payments.

Q  What were you doing at that time?

A  I was working in California for Santa Fe Railroad.

Q  And what was your, did you have any particular agreement about—

A  No, no agreement.  I was just helping out financially.  That's all.

\* \* \* \* \* \*

Q  And nobody made you pay any rent, did they, for living there in the home?

A  Nobody demanded I pay the rent.  I did it because they needed the financial help.

\* \* \* \* \* \*

Q  And this debt that we are talking about to Federal Land Bank, that was a debt that Peggy Avery owed; is that correct?

A  That's the—Peggy Avery may have owed it but I started making the payments in '81 because they needed financial help.

In our opinion, the evidence preponderates against the trial court's finding that the deed to Mr. Avery, as to 34 acres, absolute on its face, was subject to a resulting trust.

The judgment of the trial court is vacated. This case is remanded to the trial court for the entry of an order construing the last will and testament of William P. Avery to vest all of the latter's property, real, personal, and mixed, including all of the 36 acres and appurtenances, in the plaintiff Deborah Smalling in fee simple.  Costs on appeal are taxed and assessed to the appellees.

GODDARD, P.J., concurs in separate opinion.

McMURRAY, J., concurs.

GODDARD, Presiding Judge, concurring.

I concur in the reasoning and the result reached by the majority opinion, but write

---

1. It has also been held that the common law unities—time, title, interest and possession—have become academic since enactment of the statute.

separately to point out that in my view the language contained in the deed from Mrs. Avery to her son is a contradiction in terms because of the recital in the deed that the conveyance is "for the purpose of creating a tenancy in common, with a right of survivorship."

I recognize that it has been held that both a tenancy in common and joint tenancy are included in the term co-tenancy.  *Hallmark v. Tidwell*, 849 S.W.2d 787 (Tenn.App.1992). However, traditionally there is no right of survivorship in a tenancy in common as there was in a joint tenancy prior to the enactment of T.C.A. 66–1–107,[1] which abolished joint tenancy survivorship.  In this regard, I do note that a right of survivorship in a joint tenancy continues to be recognized when, as here, such an intent is expressed by the grantor.

*Jones v. Jones*, 185 Tenn. 586, 206 S.W.2d 801 (1947).