IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
ASSIGNED ON BRIEFS December 9, 2008

## IN RE:  ESTATE OF ELSIE STINCHFIELD BROWNLEE, ET AL. v. JACQUE BROWNLEE HUGHES, ET AL.

**Direct Appeal from the Chancery Court for  Sumner County**
**No.  2006P-181    Tom E. Gray, Chancellor**

_____

**No. M2008-00686-COA-R3-CV - Filed January 21, 2009**

_____

This case involves the construction of a holographic will.  Decedent died in 2006, and was survived by her four children.  Her will states that one of her sons is to "have" the "home place." Two of the other siblings, the Appellees, contest the trial court's determination that the Decedent's will transfers fee simple title in the Decedent's real property owned at the time of her death to her son.  Finding no error, we affirm.

**Tenn. R. App.  P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Betty Lou Taylor, Hartsville, TN, for Appellant

Sue Hynds Dunning, Gallatin, TN, for Appellee
Bruce N. Oldham, Gallatin, TN, for Appellee

### OPINION

Elsie Brownlee died on May 30, 2006, at the age of seventy-nine.  She is survived by her four children, Appellees James Brownlee and John P. Brownlee, Jr., and Appellants Judy Brownlee White and Jacque Brownlee Hughes.

On or about October 9, 1984, Ms. Brownlee signed a holographic will, which reads, in relevant part as follows:

> My son, James E. Brownlee have the home place if he so desires.  It
> can be appraised and the value of it determined.  This can be deducted

from his share of money or it can be sold if he doesn't want to keep it and the money put in the estate to be divided equally.

On or about October 7, 1991, Ms. Brownlee prepared a holographic codicil to her will. The only mention of the home is the statement that, "[m]y personal property is all paid free and clear except a small loan against the house at Farmers Bank." On or about June 4, 2003, Ms. Brownlee prepared a second holographic codicil, which reads, in pertinent part, as follows:

Codicil to my will dated Oct. 9, 1984 and Oct. 7, 1991. Teresa Marie Brownlee [James Brownlee's daughter] is to get all the furnishings, furniture in my house. Includes dishes, cookware and whatsoever she wants. She also gets the piano and organ.

James Brownlee testified that, in 1980, Ms. Brownlee lived in a house on Old Fountain Head Road in Portland, Tennessee. That house burned in 1981, and was subsequently rebuilt. At the time she wrote the holographic will in 1984, Ms. Brownlee lived alone in the re-built house in Portland. In early 1993, Ms. Brownlee sold the Old Fountain Head Road house, and purchased a new home at 142 Phosphate Lane, in Gallatin, Tennessee. The Gallatin home was located next door to James Brownlee. The testimony reveals that James Brownlee helped his mother with general maintenance and yard work while she lived in Gallatin. Ms. Brownlee was able to live a relatively independent life until March 2002, when she fell and broke her hip. After her fall, she moved in with her son, James, and James' daughter, Teresa Smith, moved into Ms. Brownlee's house.

After moving in with her son, Ms. Brownlee continued to pay her own bills, and conducted most of her own affairs. James Brownlee testified that the only conversation he had with Ms. Brownlee concerning her will was in 1991. On that occasion, James Brownlee was delivering some clothes to his mother's house and found her making changes to her will. Although he did not see the actual document, Mr. Brownlee testified that his mother put the will in an envelope, showed him where she was putting it, and told him that he was to get the house.

Ms. Brownlee died on May 30, 2006. On June 13, 2006, Appellant Judy White filed a petition for letters of administration in the Probate Court of Sumner County. Appellee James Brownlee filed a response in opposition to the petition, alleging that Ms. Brownlee had executed a holographic will and codicils, and requesting that those documents be admitted to probate. By Order of July 11, 2006, the trial court found that Ms. Brownlee's holographic will dated October 9, 1984, the holographic codicil dated October 7, 1991, and a second holographic codicil dated June 4, 2003 should be admitted to probate.

On September 21, 2006, James Brownlee and John Brownlee, Jr. filed a petition to construe the will. The brothers specifically requested that the court determine whether the statement in the will referencing the "home place" applied to the home in Gallatin that Ms. Brownlee owned at the time of her death. The matter was heard on February 27, 2008. On March 7, 2008, the trial court

entered its order finding, in relevant part, that Ms. Brownlee made a devise of the real property in Gallatin to James Brownlee, if he accepted the devise.

The Appellants raise two issues for review as stated in their brief:

1. Was the trial court correct in ruling that it was the intent of the Testatrix to make a devise of her house to the Appellee, James E. Brownlee in fee simple and leave nothing to her remaining three children?

2. Does the Testatrix's will make a bequest of her house?

The construction of a will is a question of law for the court; therefore, we review the trial court's conclusions of law *de novo* upon the record with no presumption of correctness. ***In re Estate of Milam,*** 181 S.W.3d 344, 353 (Tenn. Ct. App.2005). We also review the trial court's findings of fact *de novo* upon the record, but with a presumption of correctness. Tenn. R. App. P. 13(d). In cases involving the construction of wills, the cardinal rule "is that the court shall seek to discover the intention of the testator, and will give effect to [that intent] unless it contravenes some rule of law or public policy." ***Stickley v. Carmichael***, 850 S.W.2d 127, 132 (Tenn.1992) (quoting ***Bell v. Shannon***, 367 S.W.2d 761, 766 (Tenn.1963)); ***see also In re Crowell***, 154 S.W.3d 556, 559 (Tenn. Ct. App. 2004). In determining the intent of the maker, we rely first on the language of the instrument:

> [T]he testator's intention must be ascertained from "that which he has written" in the will, and not from what he "may be supposed to have intended to do," and extrinsic evidence of the condition, situation and surroundings of the testator himself may be considered only as aids in the interpretation of the language used by the testator, and "the testator's intention must ultimately be determined from the language of the instrument weighed in the light of the testator's surroundings, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention not justified by the language of the writing itself.

***In re Cromwell***, 154 S.W.3d at 559 (quoting ***Nichols v. Todd***, 101 S.W.2d 486, 490 (Tenn. Ct. App.1936)). Our Supreme Court has stated that, when ascertaining the testator's intent by construing the language used in a will, we must consider the will as a whole. ***In re Estate of Vincent***, 98 S.W.3d 146, 150 (Tenn. 2003). Moreover, Tenn. Code Ann. §32-3-101 provides:

> A will shall be construed, in reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, and shall convey all the real estate belonging to the testator, or in which the testator had any

interest at the testator's decease, unless a contrary intention appear by its words in context.

The enactment of this statute changed the common law rule that a will spoke as of the time of its execution, and that property acquired by the testator after the execution of the will could not pass thereby. *See, e.g., Nichols v. Todd*, 101 S.W.2d at 489.

In their primary argument, Judy White and Jacque Hughes contend that Ms. Brownlee's use of the words "home place" in her October 9, 1984 will, was intended to refer only to the home in Portland, Tennessee, where Ms. Brownlee raised her family. From our review, the record does not support this conclusion. As used in devises of real property, the term "home" or "home place" usually includes both a house and all land and appurtenances thereto:

> The word "home" in a devise may have a broader significance than "house," since it includes not only the dwelling house, but the entire permanent residence estate, including all appurtenances customarily enjoyed by the testator during his or her lifetime, which tend to make the home a convenient and agreeable place of abode or domicil. The use of the word "home" in a will refers to a domicil or place where one intends to remain, as opposed to a summer house or other less permanent residence.

> Contiguous or adjoining parcels of land owned by a testator may pass under a devise of a "home," where it appears from various circumstances that the several parcels were treated or regarded by the testator as a unit. Moreover, the fact that different parcels of land owned by a testator are not contiguous will not of itself prevent the passing of all of them under a single devise of a "home" or "home place" where each was used together and regarded by the testator only as a part of an entirety.

> The word "home," or some close analogue, as used in a devise, is comprehensive enough to include a garage or other buildings on the premises used by the testator in connection with the occupancy of the dwelling house. Circumstances tending to show the intention of the testator in using such language may indicate that the devise of a "home," or "home place" includes farmland as well as a dwelling house located on such farm.

> Whether a residence acquired by the testator after the execution of his will passes under a devise of "my home," or a close analogue, depends upon the proper construction of the will in the light of all its provisions, as well as the circumstances surrounding

-4-

the testator at and after execution of the will and any other factor which will aid in a determination of the testator's intention.

80 Am. Jur. 2d Wills § 1102 (2007) (footnotes omitted).

The record indicates that, at the time Ms. Brownlee made her will in 1984, the original "home place"–that is, the house where Ms. Brownlee raised her children–no longer existed because it had burned in 1981. In 1984, Ms. Brownlee was living in the house that had been re-built on the original land. It is clear, therefore, that Ms. Brownlee did not intend to pass only that house where her children were raised as Appellants suggest. Under the circumstances, it appears that Ms. Brownlee's use of the term "home place" was meant to convey something more than just a house. As set out in the American Jurisprudence section above, the term "home place" often denotes a larger devise, including not only a dwelling place, but also additional lands, and appurtenances. That being said, the question remains as to whether the Gallatin property, which was acquired after the execution of the 1984 will, should pass under the 1984 devise of the "home place." We conclude that it should.

Tenn. Code Ann. §32-3-101, provides that a will should be construed to "speak and take effect as if it had been executed immediately before the death of the testator." Unless a contrary intention is supported by the words of the conveyance, it shall be construed to convey all the real estate belonging to the testator at the time of his or her death. *Id.* At the time of Ms. Brownlee's death, the only real property she owned was the Gallatin house next door to James Brownlee. Concerning Ms. Brownlee's intent to pass this house to Mr. Brownlee, the record indicates that, between 1984 when she executed the holographic will and her death in 2006, Ms. Brownlee made two codicils to her will ( October 7, 1991 and June 4, 2003, *supra*). In the June 4, 2003 holographic codicil, Ms. Brownlee specifically states that it is a "codicil to my will dated Oct. 9, 1984 and Oct. 7, 1991." The mention of the October 9, 1984 will indicates a ratification of the will. Moreover, there is no indication in either of the two codicils that Ms. Brownlee intended to amend the operative paragraph of the 1984 will, which devises the "home place" to Mr. Brownlee. The fact that Ms. Brownlee had moved to the Gallatin house in 1993, some ten years prior to making her last codicil, coupled with the fact that she did not include language in that last codicil to indicate a change in her intent to leave her house to Mr. Brownlee, supports the trial court's conclusion that the Gallatin house passed to Mr. Brownlee under the 1984 will.

In their secondary argument, Appellants contend that the language used by Ms. Brownlee in her 1984 will is not operative to convey her real property to Mr. Brownlee because the disputed paragraph allegedly contains no "granting clause." In her will, Ms. Brownlee states: "My son, James E. Brownlee have the home place if he so desires." Because Ms. Brownlee does not use the term "bequeath," "devise," or "give," Appellants argue that the language is ineffective to make a conveyance of real property. We disagree.

Testamentary language must show some intent on the part of the testator to have the instrument control the title of real or personal property after the testator's death. *See* Jack W. Robinson, Sr., et al., *Pritchard on Wills and Administration of Estates* §16 (6th ed., 2007). "[C]ourts

are no more scrupulous with respect to the language that they allow to operate as testamentary than they are with respect to the nature of the instruments that they allow so to operate." *Id*. Although the testator's language must show intent, there is no mandate that a particular phrase be used, or even that the language be put in direct or imperative terms; "wishes and requests may be deemed sufficient." *Id*. In fact, "where the intent of the testator is determined, the use of inept words or errors in grammar and punctuation will not vary, change or alter that intent." *Mongle v. Summers*, 592 S.W.2d 594, 596 (Tenn. Ct. App. 1979) (relying on Harry Phillips, *Pritchard on the Law of Wills and Administration of Estates* §391 (3rd ed.1955); 95 C.J.S. Wills § 612 (1957); 80 Am. Jur.2d Wills §1154).

Turning to the language used by Ms. Brownlee, *Black's Law Dictionary* (5th Ed. 1979) indicates that the term "have" "imports ownership, and has been defined to mean 'to keep,' 'to hold in possession,' 'to own.'" In *Nichols v. Todd*, 101 S.W.2d at 487, this Court held that the following language was sufficient to convey a life estate to the decedent's husband:

> The following is my will, at my death I want my husband...to have all
> my property, both real estate and personal as long as he lives.

In the more recent case of *Smalling v. Donaghey*, 943 S.W.2d 397 (Tenn. Ct. App. 1996),

we construed the following language used in a holographic will:

> I would like Deborah to have my home and property to maintain and
> keep with the hope that she may find the comfort and independence
> that has been denied me....

*Id*. at 399. In *Smalling*, we concluded that this language operated to vest all rights in the decedent's property in Deborah Smalling, in fee simple. Likewise, in the case at bar, we conclude that Ms. Brownlee's use of the word "have" indicates her intent to transfer title in the Gallatin property to her son James.

In the alternative, Appellants argue that the conveyance is a conditional devise rather than a fee simple conveyance. Specifically, Appellants contend that, as a condition to his acceptance of the devise, Mr. Brownlee should be required to have the property appraised and should have to pay the appraised value into the estate, with the proceeds then divided equally between the four siblings. This interpretation is not supported by the language of the will. The 1984 will states that the home place "can be appraised and the value of it determined. This can be deducted from his share of money or it can be sold if he doesn't want to keep it and the money put in the estate to be divided equally." We interpret this language to show Ms. Brownlee's intent that, if James Brownlee accepts the devise, the appraised value of the property should be deducted from his share of the total estate. However, we cannot go so far as to conclude that the language requires Mr. Brownlee to pay any

money to the estate if he chooses to keep the property. By its plain language, the will only requires money to be paid into the estate if Mr. Brownlee does not choose to keep the home, and it is sold.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed one-half to Appellant Jacque Brownlee Hughes, and one-half to Appellant Judy Brownlee White, and their respective sureties.

      _____

      J. STEVEN STAFFORD, J.