In re ESTATE OF ELIZABETH L. RHODES, Deceased.

HARRY JAMES ALEXANDER, Petitioner-Plaintiff in Error.

*v.*

CHARLES T. RHODES, Proponent of the Alleged Will of Elizabeth L. Rhodes, Respondent-Defendant in Error.

436 S.W.2d 429.

(*Jackson,* April Term, 1968.)

Opinion filed May 6, 1968.

TAYLOR & TAYLOR, Memphis, for plaintiff in error.

MONTEDONICO, GILLILAND, HEISKELL, DAVIS, CANALE & GLANKLER, Memphis, for defendant in error.

MR. JUSTICE HUMPHREYS, delivered the opinion of the Court.

This is a will contest case, tried to a jury on the issue of devisavit vel non; the contention of the contestant being (1) that the will offered for probate as the holographic will of Elizabeth L. Rhodes was not in her handwriting, (2) that Elizabeth L. Rhodes was not mentally competent to make a will, and (3) that the will was the product of undue influence exercised on her by the beneficiary of the will, her husband, Charles T. Rhodes. The jury found in favor of the will, and the trial judge approved the verdict. The Court of Appeals affirmed. Certiorari was granted by a Justice of this Court, because of the apparent contradiction between certain facts found in the Court of Appeals opinion, the judgment of the lower court, and the ultimate judgment of the Court of Appeals. Upon a consideration of the errors assigned, we affirm the judgments of the Circuit Court and the Court of Appeals.

The first proposition to be dealt with is, the basis upon which appellate courts must review the facts on an appeal of a will contest case. This proposition arises because it would appear that the Court of Appeals opinion accepted as true certain facts, and drew inference from others, which were controverted by material evidence introduced by proponent. This was erroneous. Judge

Phillips, in his Revision of Pritchard Law of Wills and Administration of Estates, Third Edition, sec. 377 says:

"The same rules apply as to the scope of review in will contests as in other cases at law. The court of appeals will consider only whether there is any material evidence to support the verdict and judgment of the trial court." sec. 377, p. 345.

In *Parker v. West,* 29 Tenn.App. 642, 647, 199 S.W.2d 928, this proposition is amplified, the following being said:

"[8] Upon review of a judgment of the circuit court based upon the verdict of a jury we are governed by the rule that where a trial judge approves a verdict of a jury and enters judgment thereon, this court does not consider the question of the preponderance of the evidence, but only whether there is any material evidence to sustain the verdict and judgment of the trial court. *Kurn v. Weaver,* 25 Tenn.App. 556, 161 S.W.2d 1005.

"[9] *This rule applies with respect to every material issue in the case. All reasonable inferences must be resolved in favor of the verdict which was approved by the trial judge. Anderson v. Carter,* 22 Tenn.App. 118, 118 S.W.2d 891, 892; *and all countervailing evidence must be discarded. Davis v. Mitchell,* 27 Tenn.App. 182, 178 S.W.2d 889.

"[10] These rules apply upon a review of a judgment of a trial court based upon the verdict of a jury in a will contest case. *Bridges, Ex'r. v. Agee,* 15 Tenn.App. 351; *Flanary v. Lannom, Adm'r,* 12 Tenn.App. 236; *Hackworth et. al., v. Hackworth et al.,* 6 Tenn.App. 452." 29 Tenn.App. 647, 199 S.W.2d 930. (Emphasis supplied.)

■ This being the rule, it was necessary for the Court of Appeals, as it is for us, to try the case in the light of the evidence which illuminates and justifies the judgment and verdict, rather than otherwise.

Stating the case without the garnishment of the details of the proof: In March, 1964, Elizabeth L. Alexander Rhodes died from suffocation, from a fire in her home. She left a paper writing which was found in her lockbox purporting to be her holographic will. It was dated August 15, 1963, and devised her entire estate to her husband, Charles T. Rhodes. Harry James Alexander, her son by a former husband, from whom she had been divorced in 1951, received nothing under the will. The bulk of the property willed had been left to her by John J. Donnelly. It appears that Mrs. Rhodes' only relationship to Donnelly had been such that she considered filing a federal inheritance tax return as his common law wife. Shortly after she received this property, she married Charles T. Rhodes, with whom she had been associated on a familiar basis for some time prior to Donnelly's death. The marriage occurred in Mississippi, in the presence of members of the family of both parties. In March, 1964, Mrs. Rhodes was found dead in her home, from suffocation. The homicide report states that she had one-half a lethal dose of alcohol, and a fatal saturation of carbon monoxide from smoke caused by a fire in her room. There is no evidence Mr. Rhodes had anything to do with Mrs. Rhodes' death. In April, 1964, Mr. Rhodes offered the purported will for probate in Shelby County Probate Court. He testified he had found the paper writing among her valuable papers, her lockbox being mentioned during this testimony, and that it was in his wife's handwriting. However, another handwriting witness qualified his

opinion on the handwriting so that the matter of probate was not disposed of at that time. Pending this, on May 20, 1964, Harry James Alexander petitioned the probate court to transfer the case to the circuit court to be tried on the issue of devisavit vel non, and this was done.

In August, 1964, Charles T. Rhodes committed suicide, shooting himself in the head with a revolver. There is no warrantable inference this act was in any way related to the probate and contest of his wife's will. He had already had another personal representative appointed to attend to his wife's will, because of bad health. The act can more reasonably be attributed to his having been sick for some time with cancer.

Rhodes left a will by which he devised one-half of the property he expected to receive under Mrs. Rhodes' will to Harry James Alexander.

After the case was removed to the circuit court, and had been revived as to Union Planters Bank of Memphis, as executor of the estate of Charles T. Rhodes, it was tried to a jury demanded by the contestant, resulting in a verdict in favor of the will.

During the trial of the case two things occurred which were made the primary basis of the appeal to the Court of Appeals, and are the primary basis of the assignments of error in this Court. After the case was called and announced ready for trial, the parties stated their contentions to the jury. The proponent stated that the paper writing was offered as the holographic will of Mrs. Rhodes. The contestant stated that it was not: (1) upon the grounds the paper writing was not in her handwriting; (2) that, she was mentally incompetent to make a will, and (3) that the will was the result of undue

influence. Thereafter, the parties introduced evidence on these issues. Later, evidently in the course of reviewing the file in the case for the purpose of instructing the jury, it came to the attention of the trial judge that no declaration, alleging the paper writing to be the will of Mrs. Rhodes, had been filed. Nor, had there been any pleas filed by the contestant. This was brought to the attention of counsel, and after some discussion the court required that a declaration be filed alleging the due and proper execution of the will, and pleas be filed contesting the will on the issues first stated to the jury.

Also, in the course of the trial, and in instructing the jury, the trial judge declined to adopt the contention of the contestant that the facts and circumstances of the case were such as to cast suspicion upon its prima facie validity, so as to leave the burden of proof in regard to the validity of the will on the issues of sanity and undue influence on the proponent.

Although other errors were assigned the Court of Appeals narrowed the grounds for reversal down to the two propositions mentioned and held on authority of *Bowman v. Helton,* 7 Tenn.App. 325, that reversible error had not been committed by the trial judge in ordering a declaration and pleas to be filed; and that the bulk of suspicious circumstances relied on by contestant did not relate to the execution of the will, thereby concurring in the trial judge's fact finding that there was not enough evidence of suspicious circumstances in connection with the execution of the will to sustain the position of the contestant.

Stated in brief the assignments of error in this Court are:

"1. Where suspicious circumstances are shown to exist at the time of the execution of a will or upon the death of the testator, does the burden of demonstrating the capacity of the testator rest upon the proponent of the will or does it rest upon the contestant?

"2. Is the same proof required for the admission of a will to probate in Circuit Court as in the Probate or County Court?

"3. Can a will contest be tried on the issue of devisavit vel non in the Circuit Court on the pleadings filed in the Probate or County Court?"

This Court is of opinion as stated, that the assignments of error are not good.

With respect to the last proposition the Court of Appeals held on authority of *Bowman v. Helton,* 7 Tenn. App. 325, there was no reversible error. We agree.

T.C.A. sec. 32-405 provides:

"Issues—When and how made up—When triable.—At the first term after the filing of the certificate aforesaid, and will, in the office of the clerk of the circuit court, an issue shall be made up, under the direction of the court, to try the validity of the same, and the issue or issues thus made up shall be triable at the first term following the filing of the will, certificate, and other necessary papers; provided, said papers are filed five (5) days before the term of the court."

It is apparent that the original statement of the issues to the jury and the subsequent filing of a declaration and written pleas reducing these issues to writing,

is a sufficient compliance with T.C.A. sec. 32-402, which simply delineates the practice fixing no hard and fast rule that must be strictly conformed to at the risk of fatal error. The statute was not intended to supplant the general rule that by preceding to trial voluntarily, without objecting to the pleading by motion for judgment thereon, or by default, or for confessed judgment for lack of pleas, a party is deemed to have waived failure to raise, form, or join issue properly, or at all. This rule has been applied with respect to failure to raise, form or join issue, arising from the want of a declaration, plea, reply, replication or rejoinder. Moreover, where the parties have voluntarily and without objection tried the case as if certain matters were in issue, one party will not be permitted afterwards to object that such matters were not properly put in issue by the pleadings; the doctrine of waiver or estoppel being applied. 71 C.J.S. Pleading sec. 548 et seq.; *Winn v. Fidelity Mutual Life Association,* 100 Tenn. 360, 47 S.W. 93; *Cherry v. Smith,* 10 Heiskell, 389.

Finally, even without the benefit of these salutary rules of waiver and estoppel, this Court could not reverse on the basis of the asserted error, because of the express provision of T.C.A. sec. 27-117, that "no verdict or judgment shall be set aside or new trial granted by any appellate court, in any civil or criminal cause * * * for error in acting on any pleading, demurrer, or indictment, or for any error in any procedure in the cause, *unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial.*" Being of opinion it does not affirmatively appear that the error

complained of did affect the results of the trial, we must overrule this assignment of error on the statute.

So, for all the reasons mentioned this particular proposition is decided against the contestant.

■ The only question which this Court could consider under the second assignment, the questions in this Court being questions of law only, is whether as a matter of law proponent proved the will to be entirely in the handwriting of the testatrix as required by T.C.A. sec. 32-105, which provides: "No witness to a holographic will is necessary, but the signature and all its material provisions must be in the handwriting of the testator and his handwriting must be proved by two (2) witnesses."

We find the will was proved to be entirely in the handwriting of the testatrix. Proof to this effect was made by an eminently qualified handwriting expert, Charles Appel.

■ The proponent also offered as part of the proof in chief on this issue, the testimony given by Charles T. Rhodes on this same issue in the probate court. Rhodes' testimony in the probate proceeding, in which he was cross-examined by contestant's counsel, was that he knew his wife's handwriting and that the will was entirely in her handwriting. This testimony was taken down by a court reporter and later transcribed. A transcript of the proceedings in the probate court was introduced in evidence without objection as Exhibit 1 to the testimony of this court reporter. Charles T. Rhodes being dead, his testimony under oath at a former trial on the identical issue, where he was cross-examined by counsel, was competent proof as to the handwriting in the will, as an

accepted exception to the hearsay rule. This proposition is discussed in 29 Am.Jur. Evidence, sec. 738 where it is said on authority of a number of cases:

"The law recognizes, however, that it is sometimes impossible to produce a witness who has testified at a former trial, as where the witness dies, becomes insane before the later trial, is out of the jurisdiction, or is kept away from the trial by the opposite party. In such cases, where the second action is between the same parties or their privies and involves the same issues, and where the party against whom the evidence is offered had the opportunity to cross-examine the witness who gave the testimony, such testimony given at the former hearing or trial is, according to practically all decisions, admissible in the later one. Because such testimony has been delivered under the sanction of an oath and subject to the right of the adverse party to cross-examine the witness giving it, it is not open to the objections ordinarily urged against hearsay evidence." 29 Am.Jur.2d sec. 738, p. 808

Finally, even if what we have said were not enough, and it is, this particular contention cannot now be made, because there was no assignment of error in the Court of Appeals directed to the proof of handwriting, and the question was not made in the motion for a new trial. Contestant's own expert witnesses, Marion Moore and Linton Godown, had expressed the opinion the will was in the handwriting of Elizabeth L. Rhodes; as did Burt Morelock, a brother of Elizabeth L. Rhodes, a witness for the contestant, so no question as to this was raised.

This brings us to the third and final proposition, whether the case should be reversed by this Court be-

cause the trial judge was of opinion the facts did not require that the case be tried with the burden of proof as to competency and undue influence being the continuing burden of the proponent, a burden that did not shift to the contestant.

The most scholarly discussion of what are suspicious circumstances which can affect the burden of proof as to sanity is to be found in *Burrow v. Lewis et al.*, 24 Tenn. App. 253, 142 S.W.2d 758 (1940), certiorari denied, in an opinion written by now Court of Appeals Presiding Judge, McAmis. In discussing this matter Judge McAmis said:

"We have not found a case holding that the court may finally determine the substantive issue of the execution of the will upon conflicting evidence. We are unable to see how the court could exercise such prerogative without violating the constitutional right of trial by jury and such a contention is, we think, unsound in principle. If the court passes upon the legal execution of the will only upon a prima facie showing of its due and legal execution and the jury passes upon it not at all no matter how conflicting the evidence, the result is a no man's land where neither the court nor the jury may exercise the prerogative of determining finally and upon its merits this important issue.

"Assignments XIII, XVII and XIX all relate to the question of the burden of proof and we think are governed by the principles which we have attempted to review and apply in disposing of other assignments. As applied to the facts of this case, we think, no error has been shown in the charge to the jury upon this subject as it relates to the question of the legal execution of the will.

"[9] By assignments X and XV it is insisted the court erred in imposing upon proponent the burden of satisfying the jury by a preponderance of the evidence that the testator was possessed of 'testamentary capacity' at the very time he executed the paper offered for probate.

"After defining, at the outset of the charge, the issues to be submitted to the jury upon contestant's pleas of insanity and undue influence, the court charged the jury generally upon the subject of the burden of proof as follows:

'As in all other will cases, the burden of proof is upon the executor, or the proponent in this case, to establish the due and formal execution of the will, being the paper so as to amount to a will of the party signing it, as above stated. If the due execution of the will is proven by the proponent, and undue influence and unsoundness of mind are charged by the contestants, as in this case, then the burden of proof is on the contestants to establish such charge or charges subject to the variations hereinafter given you.'

"Considering the excerpts taken from the charge and made the basis of assignments X and XV in the light of the above charge upon the general subject of the burden of proof and in connection with their context, we think the court had in mind the burden of proof upon the question of the due and legal execution of the paper in charging the jury that the burden rested upon proponent to show that at the very time the will was executed testator was possessed of 'testamentary capacity.'

"[10] The cases of *Cox v. Cox*, 4 Sneed 81, 36 Tenn. 81, *Bartee v. Thompson*, 8 Baxt. 508, 67 Tenn. 508 and cases of similar import, cited supra, do not go so far as

to place the burden of showing testamentary capacity upon the proponent. They all deal with cases where the testator is aged, sick and infirm or unable to read and write by reason of blindness or illiteracy. In such cases it is held that proponent is onerated with the burden of showing that the testator comprehended the fact that he was about to execute his will and understood the contents of the paper. None of them hold that the burden of showing testamentary capacity rests upon proponent at any time or under any circumstances. Except when insanity is shown to have existed prior to the execution of the will this burden rests throughout the trial upon contestant. *Smith v. Smith,* 63 Tenn. (4 Baxt.), 293. For this reason we think the charges complained of under these assignments are technically erroneous, but we are unable to see wherein proponent has suffered materially since, under facts appearing in the record without dispute, the burden of proof rested upon him to show that the testator comprehended the business in which he was engaged and understood the contents of the paper signed as his will. This implies necessarily a showing of soundness of mind at the very time the will was executed. The better practice is undoubtedly to maintain a clear distinction between the burden of proof upon the legal execution of the will in cases where, by reason of the peculiar facts appearing, the burden of showing a conscious execution of the will free from suspicious circumstances is placed upon proponent and the general burden of establishing insanity and undue influence which, as we have seen, continues throughout the trial to rest upon contestants." 24 Tenn. 261-262, 142 S.W.2d 763.

On this question of mental capacity Phillips' Pritchard Law of Wills, sec. 105 says:

"The burden of proving the formal execution of the will is always on the proponent; but when this is done, the presumption of law is in favor of the sanity of the testator, and the will may be read to the jury. The burden of overcoming the legal presumption of capacity, and of showing of want of it by the preponderance of the evidence, is upon the party impeaching the will."

In *Smith v. Smith*, 63 Tenn. 295, this Court said:

"Whatever may be the conflict of judicial ruling elsewhere upon this subject, the doctrine of this Court has always been uniform, that when a will is produced, and its formal execution established by proof, and the will is attacked for fraud of incapacity of the testator, the burden of proof is upon the assailing party to show the fraud, undue influence or want of testamentary capacity. 7 Hump., 92; 6 Cold., 25; Car.L.S., 789; 1 Swinb. 45; 1 Redf. 46; 2 Greenl.Ev., sec. 689; 1 Jarm., 74, 56 Verm., 38; Peters, C.C. 163; 4 Washb.C.C. 262; 10 N.H., 51, 54; Johns, 144; 4 Conn., 207; 7 Gray, 71. When, however, insanity is shown to have existed before the execution of the will, the burden of proving capacity at the time of the execution of the will, is shifted upon the plaintiff. *Hailey v. Webster*, 21 Maine, 461; *Ford v. Ford*, 7 Hump. 90 [92]". 63 Tenn. 295

Of course, the burden of proof would not be shifted from proponent in an undue influence case where the relationship of the testator and the beneficiary is not such as to create a presumption of undue influence; such as between attorney and client, physician and patient, etc.; *Rose v. Mynatt*, 15 Tenn. 30; *Rutland v. Gleaves*, 31 Tenn. 198. Since neither of these two conditions, in-

sanity prior to the execution of the will, or undue influence presumed from the character of relationship between the parties, was shown to exist in this case the burden of proof on these issues did not continue on proponent, but was on contestant.

There is much emphasis, and strong reliance, upon the fact that Mrs. Rhodes was an alcoholic. It is insisted that proof of this fact, coupled with opinion evidence by two expert witnesses called by contestant that she was under the influence of an intoxicant at the time she wrote the will was enough to keep the burden of proof on the proponent as to competency.

The rules on the effect of drunkenness on the capacity of a testator are well settled in Tennessee. The rule is correctly summarized in Phillips' Pritchard thusly:

"Drunkenness is of itself a species of insanity, self-imposed; and long continued habits of intemperance may, in some temperaments, gradually destroy the mind and impair the memory and other faculties, so as to produce permanent derangement. *But the mere fact that the testator was under the influence of intoxicating drinks, will not, of itself, render the testamentary act invalid. To have that effect, it must appear that the habit of indulging in strong drink has produced some fixed mental disease, or that his present state of intoxication is such as to render him not master of himself and therefore irresponsible for his acts.*" sec. 114 (Emphasis supplied.)

The text continues:

"There is no presumption of the continuance of incapacity resulting from inebriety or disease. Proof of long continued habits of intemperance does not re-

quire proof of a lucid interval to give validity to the acts of the drunkard, as is required where general insanity is shown; unless it seems the indulgence has produced premanent derangement of mind. Where the testator's habits of intoxication are not such as to render him habitually incompetent, it is necessary for the party setting up his incapacity on the ground of intoxication to show its existence at the time of executing the will. After proof of excitement of delirium at the time of the act, the burden is upon the proponents of the will, to disprove its existence in such a degree as would vitiate the will." sec. 116.

■ There is no credible evidence that alcoholism had produced in Mrs. Rhodes any mental derangement, or as stated in Phillips' Pritchard had "produced some mental disease". The evidence of intoxication at the time Mrs. Rhodes wrote the will is not such as to cast doubt on its validity. On the day she wrote the will, she wrote five separate checks in payment of legal obligations, the checks varying in amount, with notations thereon as to the purpose of payment. Additionally, there are checks in the record written by Mrs. Rhodes some two, five and six days prior to the execution of the will, again varying in amounts, again to various persons for different purposes, with each check containing a notation of the purpose of the payment. Additionally, there are numerous other checks in the record drawn and paid within a period of six months before and after the making of the will which show a capacity for handling business affairs such as paying taxes, insurance premiums and other items, reflecting an awareness of her property and obligations. In truth, the practically uncontradicted evidence is that Mrs. Rhodes regularly and competently attended to a

reasonably large volume of business involving an estate estimated at between two and three hundred thousand dollars which consisted largely of rental property. Over and above this is the fact Mrs. Rhodes kept the will for nearly a year after she wrote it, during all of which time she could have destroyed it or written another, there being no adequate proof she was not competent to do either of these things.

Admitting that Mrs. Rhodes was an alcoholic and conceding for the sake of argument she had been drinking on the day she wrote her will, the sum total of all the facts we have with respect to Mrs. Rhodes' mental capacity on that day, and before and after, leave it improbable she was not competent to make a will under the rules quoted above from Pritchard.

 Finally, there can be no reversal on this issue since the question of the presence or absence of suspicious circumstances was one of fact, decided against contestant by the trial judge, concurred in by the Court of Appeals. This concurrent finding of fact is binding on this Court. The rule in this regard is stated in *Overbey v. Poteat,* 206 Tenn. 146, 149, 332 S.W.2d 197, as follows:

"(1) It may be well at this point to recall that findings of the ultimate facts, whether based on conflicting evidence, or on uncontroverted evidence, if concurred in by the trial court and the Court of Appeals, and if supported by any material evidence, are not subject to review in the Supreme Court; conclusions of law based on those findings of fact are, however, open for review in this Court. *Ins. Co. of North America v. East Tenn. V. & G. Ry. Co.,* 97 Tenn. 326, 37 S.W. 225; *Martin v. McCrary,* 115 Tenn. 316, 89 S.W. 324, 1 L.R.A.,N.S.,

530; *Moore v. Cincinnati, N. O. & T. P. Ry. Co.,* 148 Tenn. 561, 256 S.W. 876 (W.C. Case); *King v. Buckeye Cotton Oil Co.,* 155 Tenn. 491, 296 S.W. 3, 53 A.L.R. 1086 (W.C. case)." 206 Tenn. 149, 332 S.W.2d 199.

Since there was much material evidence, the question is foreclosed in this Court.

The assignments of error are overruled and the judgment of the Court of Appeals affirming the judgment of the Circuit Court is affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN, and CRESON, JUSTICES, concur.