# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
May 24, 2000 Session

## BVT LEBANON SHOPPING CENTER, LTD v. WAL-MART STORES, INC., et al.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Circuit Court for Wilson County**
**No. 9113     Bobby Capers, Judge**

---

### No. M1997-00059-SC-R11-CV - Filed March 1, 2001

---

This appeal arises out of a commercial lease dispute between Wal-Mart Stores, Inc. (Wal-Mart) and BVT Lebanon Shopping Center, Ltd. (BVT). We granted this appeal to determine the appropriate measure of damages for Wal-Mart's breach of the leasing agreement. We hold that the Court of Appeals properly affirmed the trial court's award of summary judgment in favor of BVT, holding that the gross receipts of a third party occupying part of the leased premises should be included in calculating the amount of percentage rent due under the leasing contract. We further conclude that the Court of Appeals correctly held that the appropriate measure of damages for Wal-Mart's breach of the implied covenant of continued occupancy was the diminution in the fair market value of the entire shopping center. We conclude, however, that the Court of Appeals erred in declining to remand to the trial court for an assessment of the amount of such damages. We therefore affirm the Court of Appeals in part and reverse and remand in part.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed in Part and Reversed in Part; Case Remanded

JANICE M. HOLDER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III and ADOLPHO A. BIRCH, JR., JJ., joined. WILLIAM M. BARKER, J., concurring.

John B. Comstock and Ranae Bartlett, Bentonville, Arkansas, Thomas Wright Lawrence, Nashville, Tennessee, and Vester Neal Agee, Lebanon, Tennessee, for the appellants, Wal-Mart Stores, Inc. and Kuhn's-Big K Stores Corp.

Kenneth F. Scott and Thomas V. White, Nashville, Tennessee, for the appellee, BVT Lebanon Shopping Center, LTD.

**OPINION**

J.R. Freeman (Freeman) and Kuhn Brothers Co., Inc. (Kuhn Brothers) entered into a lease agreement in 1968 under which Kuhn Brothers agreed to lease space in The Center of Lebanon, a shopping center owned by Freeman. The lease provided for a guaranteed minimum rent and for additional rent calculated as a percentage of Kuhn Brothers's gross receipts (percentage rent). In 1981, the lease was amended, conditioned in part upon Wal-Mart's acquisition of Kuhn Brothers. The 1981 Amendment extended the lease to 1996; increased the base rent to $136,500 per year; reduced the percentage rent to 2% of gross receipts between $6,825,000 and $9,100,000, 1.5% of gross receipts between $9,100,000 and $13,650,000, and 1% of gross receipts over $13,650,000; and changed the permitted use from "retail promotional type store" to "discount department store."

The lease was amended again in 1985, following BVT's acquisition of The Center of Lebanon, to accommodate Wal-Mart's desire to expand its lease space from 50,000 square feet to 84,000 square feet. BVT agreed to pay for the approximate $1,500,000 in expansion costs, including the purchase of additional real estate and the buyout of a lease adjacent to the Wal-Mart premises. The 1985 Amendment extended the lease to 2005; increased the base rent to $272,000; and reduced the percentage rent to 1.5% of gross receipts between $18,133,333 and $20,000,000 and 1% of gross receipts above $20,000,000.

On October 5, 1994, BVT filed suit for anticipatory breach of the leasing agreement. BVT alleged that Wal-Mart intended to replace the Wal-Mart store with a Bud's Discount City (Bud's) and to open a new Wal-Mart Superstore in the area. BVT alleged that Wal-Mart breached an implied covenant of continuous occupancy. BVT also alleged that Wal-Mart breached the express "permitted use" clause of the lease, claiming that Bud's did not qualify as a "discount department store." BVT sought $4,689,526 in compensatory damages.

In May of 1995, Wal-Mart ceased operating its Wal-Mart store in The Center of Lebanon. In October of 1995, Bud's opened in the space previously occupied by the Wal-Mart store. Wal-Mart continued to pay the $272,000 annual base rent throughout this period. Bud's, however, never generated sufficient gross receipts to allow BVT to collect any percentage rent.

On May 15, 1996, BVT amended its complaint to include a claim for third-party receipts. Until 1994, Wal-Mart had paid BVT percentage rent based upon the gross receipts of a Medco Drugs store (Medco) operating within the space leased to Wal-Mart. BVT alleged that it was entitled to percentage rent based upon Medco's 1994 and 1995 gross receipts. Wal-Mart contended that it had overpaid percentage rent for several years prior to 1994 and sought reimbursement in a counterclaim.

In its answer to BVT's amended complaint, Wal-Mart made its first request for a jury trial. Wal-Mart's subsequent motion to schedule a jury trial was denied by the trial court. Thereafter, BVT filed a motion for partial summary judgment on its claim for percentage rent on Medco's gross receipts. The trial court granted BVT summary judgment, holding that the Medco receipts were

included in the contract's definition of "gross receipts" from which Wal-Mart's percentage rent was calculated. The court, however, reserved for trial the issue of damages.

On a trial of all of the remaining issues, the trial court found that Wal-Mart had breached both the express permitted use clause of the lease and an implied covenant of continuous occupancy. At trial, BVT proposed alternate measures of damages: 1) the present value of the lost future percentage rent alone, or 2) the diminution in the fair market value of the shopping center caused by Wal-Mart's withdrawal as the anchor tenant. The trial court found the proper measure of damages to be the present value of the lost future percentage rent for the duration of the lease term and awarded BVT $2,507,674 in damages for Wal-Mart's breach of contract. With respect to the Medco receipts claim, the trial court awarded BVT $108,759 in damages plus interest.

Wal-Mart appealed from the trial court's judgment. BVT filed a cross-appeal seeking compensatory damages based upon diminution in value. The Court of Appeals adopted the diminution in market value of the entire shopping center as the proper measure of damages and modified the trial court's judgment by increasing BVT's compensatory damages to $4,695,000. The Court of Appeals affirmed the trial court's judgment on all other issues. We granted review.

ANALYSIS

We agree with the well-reasoned analysis of the Court of Appeals that there was an implied covenant of continuous occupancy in the lease between BVT and Wal-Mart and that Wal-Mart breached that covenant by relocating and replacing its store with a Bud's Discount City. We therefore decline to further address that issue on appeal. We granted appeal in this case to address: 1) whether the trial court erred in denying a jury trial and awarding summary judgment in favor of BVT on the issue of the Medco receipts; 2) the proper measure of damages for Wal-Mart's breach of the implied covenant of continuous occupancy; and 3) whether the Court of Appeals erred in declining to remand to the trial court for an assessment of the amount of such damages.

Summary Judgment/Denial of Jury Trial

Wal-Mart contends that the trial court erred in denying its request for a jury trial on the issue of past percentage rent based upon Medco's gross receipts. The Court of Appeals held that Wal-Mart's request for a jury trial in its response to BVT's amended complaint was properly denied because BVT did not raise any new factual issues in its amended complaint. We agree.

Our review of a trial court's award of summary judgment is de novo, the trial court's decision being purely a question of law. See Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999). Rule 38.02 allows any party to demand a jury trial in any Rule 7.01 pleading[1] or by written

---

[1] Rule 7.01 enumerates as recognized pleadings the complaint and answer, reply to any counterclaim, answer to any cross-claim, a third-party complaint when proper under Rule 14, and a third-party answer when a third-party
(continued...)

demand filed within fifteen days of service of the final pleading raising an issue of fact. Tenn. R. Civ. P. 38.02. In interpreting Rule 38.02, the Court of Appeals has stated, "It is now well settled that where the amendment creates new jury issues, a party upon timely demand therefor is entitled to a jury trial, if the amended pleading sets forth new factual issues and not merely a different legal theory." Trimble v. Sonitrol of Memphis, Inc., 723 S.W.2d 633, 640 (Tenn. Ct. App. 1986) (quoting 5 Moore's Federal Practice, § 38.41, p. 38-366).

Wal-Mart contends that the amended pleadings contained a new question of fact as to the parties' intended meaning of "gross receipts," making summary judgment on this issue improper. We disagree. A determination of the parties' intent in a written contract is a question of law resolved by examining the four corners of the contract and the circumstances at the time of contracting. See Realty Shop, Inc. v. RR Westminster Holding, Inc., 7 S.W.3d 581, 597 (Tenn. Ct. App. 1999); Gredig v. Tenn. Farmers Mut. Ins. Co., 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994). After the trial court determined that Medco's receipts were included in the contract's definition of "gross receipts," the remaining issue was purely a mathematical determination of the amount owed. Because there were no material issues of fact, summary judgment was appropriate.

Measure of Damages

Wal-Mart urges this Court to overturn the Court of Appeals' adoption of diminution in value as the measure of damages for breach of a covenant of continuous occupancy.[2] This is an issue of first impression in Tennessee and one that we review de novo. Beaty v. McGraw, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998). Upon careful consideration, we adopt diminution in value as the measure of damages for breach of a covenant of continuous occupancy.

Common sense dictates that an award based solely on the value of lost future rent fails to consider other economic losses suffered by a shopping center owner/lessor when its anchor tenant abandons occupancy. A shopping center's loss of its anchor store affects not only the rental income, but also stability of the center, attraction of customers and other tenants, and long-term financing. See Hornwood v. Smith's Food King No. 1, 772 P.2d 1284, 1286 (Nev. 1989); Pleasant Valley Promenade v. Lechmere, Inc., 464 S.E.2d 47, 61 (N.C. Ct. App. 1995). Calculating damages based upon diminution in value contemplates all of these factors, including lost future rent, and thereby promotes the objective of placing injured parties "in as good a position as they would have been in if the contract had not been breached." Lechmere, 464 S.E.2d at 62 (quoting Knapp, Commercial Damages: A Guide to Remedies in Business Litigation, § 1.02 (Matthew Bender 1995)).

---

[1](...continued)
complaint is filed. Tenn. R. Civ. P. 7.01.

[2]Wal-Mart's first argument, that diminution in value is an element of consequential or special damages that must be specifically pleaded, is waived for failure to raise the issue during the trial of the case. See In re Estate of Rhodes, 222 Tenn. 394, 402, 436 S.W.2d 429, 433 (1968) (doctrine of waiver applies to preclude objection on appeal to pleading deficiency when the parties voluntarily and without objection tried the case as if certain matters were in issue); see also Tenn. R. Civ. P. 15.02 (addressing trial by express or implied consent).

This holding is in line with Tennessee law regarding the general remedy for breach of contract:

> The purpose of assessing damages in breach of contract cases is to place the plaintiff as nearly as possible in the same position she would have been in had the contract been performed, but the nonbreaching party is not to be put in any better position by recovery of damages for the breach of the contract than he would have been if the contract had been fully performed.

Lamons v. Chamberlain, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993). "Generally speaking, damages for breach of contract include only such as are incidental to or directly caused by the breach and may be reasonably supposed to have entered into the contemplation of the parties." Simmons v. O'Charley's, Inc., 914 S.W.2d 895, 903 (Tenn. Ct. App. 1995). The general rule seeks to protect the non-breaching party's "expectation interest." This expectation interest is further defined by Section 347 of the Restatement (Second) of Contracts:

> Subject to the limitations stated in §§ 350-53, the injured party has a right to damages based on his expectation interest as measured by
> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
> (b) any other loss, including incidental or consequential loss, caused by the breach, less
> (c) any cost or other loss that he has avoided by not having to perform.

Restatement (Second) of Contracts § 347 (1979). Diminution in value best serves the objective of protecting the non-breaching party's expectation interest when a covenant of continuous occupancy is breached.

Wal-Mart also argues that factors other than loss of an anchor tenant may contribute toward the shopping center's loss in value, such as economic downturn, population shift, population decrease, or a store similar to the anchor store opening in close proximity. We agree that the parties should be allowed to present evidence to the trial court regarding all factors impacting the diminution in value. This may include expert testimony related to the temporary or permanent nature of the damage, the availability of replacement anchor tenants, and other market factors. Cf. Lechmere, 464 S.E.2d at 59-60 (addressing the concern of applying diminution in value to temporary contract damage, where it has been historically applied as the measure of damages for permanent, physical damage to property). With the benefit of all relevant testimony before it, the trial court may reach an appropriate award of damages.

Remand

After concluding that the appropriate measure of damages for Wal-Mart's breach of the implied covenant of continuous occupancy was the diminution in value standard, the Court of Appeals found that the only evidence in the record addressing diminution in value of the shopping center was that offered by BVT. BVT's expert testified that Wal-Mart's abandonment of the shopping center resulted in a $4,695,000 loss in the center's value. As a result, the Court of Appeals modified the trial court's judgment to award BVT damages in the amount of $4,695,000. In reaching this conclusion, the Court of Appeals overlooked the testimony of Wal-Mart's expert, who estimated that the diminution in fair market value to the shopping center amounted to only $55,000.

We hold that this case should be remanded to the trial court in order to resolve the conflicting evidence on the issue of diminution in value. The trial court in this case never considered the weight and credibility of each party's evidence on this issue, finding instead that the appropriate measure of damages was the present value of the lost future percentage rent. We therefore remand this case to the trial court for assessment of the evidence related to the diminution in value to the shopping center and for an appropriate award of damages. See Youngblood v. Wall, 815 S.W.2d 512, 518 (Tenn. Ct. App. 1991) (remand for assessment of damages is proper when the amount of damages is dependent upon witness credibility); Tenn. R. App. P. 36(a) (appellate "relief may not be granted in contravention of the province of the trier of fact.").

CONCLUSION

We hold that the appropriate measure of damages for breach of a covenant of continuous occupancy is the diminution in fair market value. Because the trial court's award of lost future percentage rent accounted for only one part of the diminution in value measure of damages, we remand this case for additional assessment as to the loss in value of the shopping center as a whole. We affirm the trial court's judgment on all other issues. Costs of this appeal are taxed to the appellant, Wal-Mart Stores, Inc., for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE