IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 16, 2005 Session

## CLIFFORD W. RUSSELL, ET AL. v. SUSAN I. RUSSELL

**A Direct Appeal from the Circuit Court, Probate Division, for Davidson County**
**No. 99P-412      The Honorable Randy Kennedy, Judge**

---

**No. M2004-01767-COA-R3-CV - Filed October 7, 2005**

---

This case involves the contest of a will on the grounds of lack of testamentary capacity. The Probate Court, Davidson County, found that the evidence failed to establish that the Testator lacked the requisite testamentary capacity to execute his will.   We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court, Probate Division, Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and WILLIAM H. INMAN, SR.J., joined.

Luther Wright, J. and Joycelyn Stevenson of Nashville, Tennessee for Appellants, Clifford W Russell and John Hall Russell

Carrol D. Kilgore of Nashville, Tennessee for Appellee, Susan I. Russell

**OPINION**

Clifford Miller Russell ("Testator") died on November 26, 1998.  On December 20, 1997, the Testator had executed a holographic will, which reads as follows:

> The last Will and Testament of C M Russell.  This will supersedes
> [sic] any & all wills made before - first, I name Susan Irene Russell
> my daughter Exec[u]trix of my will free from any costs and for her to
> distribute assets as she sees fit except as follows:
>
> I leave all my properties and money to Susan Irene Russell except:
>
> 1000.00 (one thousand) to Clifford W. Russell (son),

1000.00 one thousand to John Hall Russell my son

There are 2 Insurance Policies with them as beneficiarys [sic]

All my Personal belongings to my Daughter Susan Irene Russell to do with as she sees fit.

My interest in a Bldg[.] at 5205 Harding Road Nashville TN - to Susan Irene Russell-

Signed this 20th Day of December 1997-

CM Russell /S/

Following her father's death, Susan Russell ("Proponent," or "Executrix") offered this will for probate in solemn form. This is the second appeal concerning this will.[1] In ***Russell v. Russell***, No. M2001-00926-COA-R3-CV, 2002 WL 1827661 (Tenn. Ct. App. Aug. 9, 2002), this Court reversed the trial court's grant of summary judgment to the Proponent and remanded the case for a trial on the merits. On remand, the trial court found that the Testator's sons Clifford W. Russell and John H. Russell (together the "Contestants") had not met their burden of showing that the Testator lacked the requisite testamentary capacity to execute his will. Consequently, the trial court ordered that the December 20, 1997 holographic will be admitted to probate. Specifically, the trial court states that:

> The Court received testimony, both lay and expert, from the will contestants concerning the testator's mental condition both before and after the execution of his December 20, 1997 will. While the Court heard testimony that indicates that the testator engaged in some acts that may be perceived as irrational or showing poor judgment, isolated acts of irrational behavior or poor judgment are insufficient to lead the Court to conclude that the testator lacked the capacity to execute his last will and testament on December 20, 1997.

> &ast;        &ast;        &ast;

> The will proponent presented evidence that the decedent was competent at the time the will was executed, and of the decedent's intent to leave his estate to his daughter, Susan Russell. In light of the preponderance of evidence in support of the fact that the decedent possessed testamentary capacity and of the validity of the will, the Court hereby finds and **ORDERS** that the will contestants have not met their burden of showing that the testator lacked the requisite mental capacity to execute his will on December 20, 1997, and further **ORDERS** that the December 20, 1997 holographic will of Clifford Miller Russell is hereby admitted to probate.

---

[1] In the first appeal, Testator's sons contested the will on grounds of unsoundness of mind and undue influence. They also sought construction of the will. Following the hearing on October 12, 2000, the trial court granted summary judgment to Susan Russell on the will contest issues and granted summary judgment to the Contestants on the will construction issue.

The Contestants appeal and present two issues for review, as stated in their brief:

> A. Whether the lower court erred by holding that the Executrix proved the will's valid execution in accordance with the legal requirements.

> B. Whether the lower court erred by holding that the Contestants did not prove that the Testator lacked testamentary capacity.

We first note that, after this case was remanded, the Probate Court held a pre-trial conference and entered a pre-trial order reflecting the parties' agreement that the sole issue was the Testator's testamentary capacity when he wrote his will on December 20, 1997. The pre-trial order reads, in pertinent part, as follows:

> Pursuant to pre-trial conference held at 1:00 p.m. on March 15, 2004, between the Court and counsel for all parties, at which the parties STIPULATED that decedent, Clifford Miller Russell, was a resident of Davidson County, Tennessee at the time of his death, that he died on November 26, 1998, and that the holographic will dated December 20, 1997, and the Decedent's signature thereto, are wholly in the said decedent's handwriting, and that the Contestants raise no objection to the validity of the said will except as to Decedent's testamentary capacity on the date of execution thereof.

Because of the above stipulation, we will not address the Contestants' first issue concerning the execution of the will. Therefore, the only matter before this Court is whether the lower court erred in finding that the Testator did not lack testamentary capacity when he wrote the will. Since this case was tried by the court, sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. *See* Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of the witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *In re Estate of Walton v. young*, 950 S.W.2d 956, 959 (Tenn. 1997).

It is well settled that, in a will contest, the proponent bears the burden of proving the will's valid execution in accordance with the legal requirements. *In re Estate of Maddox,* 60 S.W.3d 84, 88 (Tenn. Ct. App. 2001). Once this burden has been met, the burden shifts to the contesting party to prove that the testator lacked testamentary capacity to execute a valid will. *See id.; Harper v. Watkins,* 670 S.W.2d 611, 629 (Tenn. Ct. App. 1984) (quoting *Taliaferro v. Green*, 622 S.W.2d 829, 837 (Tenn. Ct. App. 1981)). The capacity to make a will is the comprehension of "the property being disposed of, the manner of its distribution, and the persons receiving it." *Brewington v. Sanders,* No. 01A-01-9301-CV-00002, 1994 WL 189626, at *4 (Tenn. Ct. App., May 18, 1994)

(citing ***Goodall v. Crawford***, 611 S.W.2d 602, 605 (Tenn. Ct. App. 1980), and citing ***McCormack v. Riley***, 576 S.W.2d 358, 361 (Tenn. Ct. App. 1978)).  In addition, one "must also be capable of knowing and understanding the effects and consequences of his or her actions." ***Id.*** (citing ***In re Estate of Elam***, 738 S.W.2d 169, 171 (Tenn. 1987), and citing ***Am. Trust & Banking Co. v. Williams***, 225 S.W.2d 79, 83 (Tenn. Ct. App. 1948)).  The testator's capacity to execute a valid need only exist at the time of the will's execution. Thus, the testator's mental condition "at the very time of executing the will is the only point of inquiry; but evidence of mental condition both before and after making the will, if not too remote in point of time, may be received as bearing upon that question." ***Harper v. Watkins***, 670 S.W.2d 611, 628-29 (Tenn. Ct. App. 1984) (quoting ***Am. Trust & Banking Co. v. Williams***, 225 S.W.2d 79, 83-84 (Tenn. Ct. App. 1948)).

In the instant case, the Contestants aver that the will of the Testator is invalid because the Testator lacked testamentary capacity to make the will.  Specifically, the Contestants rely upon three specific pieces of evidence as proof of Testator's lack of testamentary capacity.  First, the Contestants argue that the Testator suffered from insane delusions about both his ability to regain ownership of property that had been awarded to his former wife, and about his uncompensated role in accumulating the family's wealth. Second, the Contestants argue that the Testator exhibited a pattern of irrational behavior over the last few years of his life that evinced an impaired sense of judgment and loss of cognitive ability.  Finally, the Contestants assert that the testimony of Dr. David Uskavitch indicates that the Testator suffered from conditions that are usually indicative of dementia and/or cognitive impairment, which would have a bearing on his testamentary capacity.  We will address each of these assertions in turn.

The Contestants argue that the Testator suffered from an "insane delusion" based on evidence that the Testator believed he could regain ownership of property that had been awarded to his former wife in divorce proceedings in 1974.  In his will of December 20, 1997, the Testator wrote, "My interest in a Bldg[.] at 5205 Harding Road Nashville TN - to Susan Irene Russell."  The Contestants argue that the Testator's belief that he had been wronged when he lost possession of the Harding Road property to his wife and that he could institute legal proceedings to regain the property more than twenty years after the divorce, and only after his ex-wife' death, is evidence of unreasonableness associated with an insane delusion.

The Contestants also assert that the Testator suffered from delusions about his uncompensated role in accumulating the family's wealth.  In a letter dated May 14, 1994, to his daughter Susan Russell, the Testator stated, "I have worked hard all my life . . . to add to the wealth of this family with no compensation.  I have built 80% of the buildings at no profit, and made 100% of the sales and rentals since 1950."  The Testator's sister, Juanita McClanahan, testified that the Testator's representation in this letter, with respect to building the family's wealth, was not true. The Contestants argue that the claim by the Testator that he had added to the family wealth and not been fairly compensated is false and unreasonable and, as such, evinces an insane delusion.

A person is said to suffer from an insane delusion " 'when he conceives something extravagant or unreasonable to exist which has no existence except in his own abnormal imagination, but having

once conceived the thing or condition[] to exist, it is impossible to reason him out of it.' " *In re Estate of McIntyre,* No. W1999-01700-COA-R3-CV, 2000 WL 33191354, *9 -10 (Tenn. Ct. App., Nov. 7, 2000) (quoting *Helm v. Hayes,* No. 03A01-9710-PB-00497, 1998 WL 251766, at * 1 (Tenn. Ct. App., May 19, 1998)). *See also* 95 CJS WILLS § 10 (stating that an insane delusion "such as will affect testamentary capacity is an idea or belief which has no basis in fact or reason and to which the testator adheres against reason and evidence. It is a delusion having no foundation in fact and that springing from a diseased condition of mind. In other words, it is a belief in a state of facts that does not exist and which no rational person would believe to exist; a belief which a rational person may entertain, however erroneous, is not an insane delusion"). The will of a testator found to suffer from an insane delusion will not be held invalid, however, unless it is shown that his delusion materially affected the terms and provisions of his will. *Helm v. Hayes,* 1998 WL 251766 at *1.

Concerning the Harding Road property, we noted that the will purports to devise *only* the Testator's "*interest* in a building at 5205 Harding Road." (emphasis added). The trial court found that the Testator did not own the property at 5205 Harding Road at the time of his death; thus, there was a latent ambiguity in the will in that it purported to devise the Testator's interest in a building he did not own. Due to the ambiguity, the trial court considered, as parole evidence, a letter that the Testator had written to his daughter. The May 14, 1994 letter indicates that the Testator clearly understood that his ex-wife was awarded the Harding Road property in the divorce action. The letter went on to state that "*If* I can reclaim this property [5205 Harding Road] I will do so before my death to save you the trouble." (emphasis added). This "If"indicates that the Testator understood that he did not have ownership of the property but that he hoped or expected that he could reclaim the property by some means. Although Testator's chances of reclaiming this property might have been tenuous at best, his statements indicate a rational thought process and do not evince an insane delusion.

Concerning the allegations that the Testator suffered from delusions about his uncompensated role in accumulating the family's wealth, Juanita McClanahan provided the following testimony in her deposition:

Q: [T]here's a reference in the middle of the page that starts with the words "because I have worked hard." Do you see that?

A: Yes.

Q: "Because I have worked hard all my life to add to the wealth of this family with no compensation," and it says, "I have built 80 percent of the building at no profit and made 100 percent of the sales and rentals since 1950." Do you see that part of the letter?

A: I do.

Q: Do you have any idea what Mr. Russell is referring to there?

A: He was patting himself on the back, wasn't he?

Q: That could be one reasonable interpretation, but what my real question is: The sales and rentals, can you help me understand what that means?

A: It's not true.

Q: Okay. And why do you say it's not true?

A: I know he got compensation from his mother for everything he built. He told me that same thing over and over again, and I just looked him in the eye. I didn't say anything. There wasn't any point in it.

The testimony of Juanita McClanahan reveals that the Testator believed that he had been overworked and under-compensated in the family business. Ms. McClanahan defined these statements as "patting himself on the back." Counsel for the Contestants agreed that this was "one reasonable explanation." We find that the beliefs the Testator held about his uncompensated role in accumulating the family's wealth are such that a rational person might entertain them and, at any rate, are not so exaggerated as to rise to the level of an insane delusion.

Contestants next assert that the Testator exhibited a pattern of irrational behavior over the last few years of his life that indicated an impaired sense of judgment and loss of cognitive ability, which resulted in the Testator lacking the requisite testamentary capacity at the time he executed his will. Specifically, Contestants point to the fact that he took a cross-county trip alone in 1996 following a heart bypass operation in March of 1995, and that the Testator had been prescribed prescription medicine for depression in 1996. Other evidence set forth by the Contestants as proof of his impaired sense of judgment include the fact that the Testator did not follow up with his local doctors after hospital treatment in Montana in 1996, and that, in the spring of 1998, the Testator interrupted cancer treatments in order to take a cruise. Additionally, the Contestants assert that the Testator suffered from severe alcohol abuse until 1984, which had a negative impact on his long-term cognitive abilities.

The Proponent offered the testimony of Dr. William Hartness, the Testator's former cardiologist, in reference to the cross-county trip taken by the Testator in 1996. Dr. Hartness testified that the March, 1995 bypass operation caused no restriction on his driving in 1996 and that "given his general compensated state and his strong desire to make this trip to rejoin with friends he had met on cruises, I saw no clear cut reason for me to deny him that trip." Concerning the antidepressant prescription, Dr. Hartness' notes revealed that the Testator was "resistant to consideration of treatment of any of these symptoms with an antidepressant" and added that he did not know whether the Testator ever filled the prescription or took it. The Proponent offered the testimony of Alice Lampley who had spoken to the Testator on the day he wrote his will and indicated that he was of sound mind on that day. Ms. Lampley went on to state that the Testator told her he had just written his will, and that he was leaving his property to his daughter Susan and not to his sons. Ward Williams testified that, upon the Testator's return from his December, 1997 riverboat cruise, Williams picked him up from the dock and drove the Testator home. Williams testified that the Testator did

not show any sign of disorientation or confusion. Patsy Cline, the Testator's first cousin, spoke with the Testator a couple of days before he left for his 1997 riverboat trip. She testified that the Testator engaged in normal conversation and showed no sign of incoherence. In addition, the Testator's sister, Juanita McClanahan, and his daughter, Susan Russell, both testified that they had regular contact with the Testator prior to and following the execution of his will. Neither of these witnesses had seen the Testator demonstrate any sign of impaired judgment, memory loss or disorientation, prior to the few weeks before his death in November of 1998.

Concerning the Testator's alleged alcohol abuse, the rules on the effect of alcohol abuse on the capacity of a testator are well settled in Tennessee. As stated by our Supreme Court in ***In re Rhodes' Estate***, 436 S.W.2d 429 (Tenn. 1968):

> Drunkenness is of itself a species of insanity, self-imposed; and long continued habits of intemperance may, in some temperaments, gradually destroy the mind and impair the memory and other faculties, so as to produce permanent derangement. . . . To have that effect, it must appear that the habit of indulging in strong drink has produced some fixed mental disease, or that his present state of intoxication is such as to render him not master of himself and therefore irresponsible for his acts. There is no presumption of the continuance of incapacity resulting from inebriety or disease. . . . Where the testator's habits of intoxication are not such as to render him habitually incompetent, it is necessary for the party setting up his incapacity on the ground of intoxication to show its existence at the time of executing the will.

*Id. at* 436 (quoting Phillips' Pritchard on Wills and Administration of Estates, §§ 114,116 (3rd Ed. 1955). The record before us contains no evidence from which we can conclude that alcoholism had any permanent effect on the Testator's cognitive ability or from which we can conclude that the Testator was under the influence of alcohol at the time he wrote his will.

From the record, we conclude that the cumulative testimony fails to establish that the Testator suffered from an impaired sense of judgment or loss of cognitive ability which would render his will invalid. The trial court found that the testimony presented by the Contestants indicates "that the testator engaged in some acts that may be perceived as irrational or showing poor judgment, [however] isolated acts of irrational behavior or poor judgment are insufficient to lead the Court to conclude that the testator lacked the capacity to execute his last will and testament on December 20, 1997." After a thorough review of the record before us, we agree with the trial court's conclusion.

Finally, the Contestants assert that the testimony of Dr. David Uskavitch, an expert neurologist, indicates that the Testator suffered from conditions that are usually indicative of dementia and/or cognitive impairment, which negated testamentary capacity at the time of the making of his will. We first note that the Testator was never a patient of Dr. Uskavitch. Dr. Uskavitch's conclusions were derived from his review of the Testator's medical records from 1996 until the time

of the Testator's death in 1998. Dr. Uskavitch stated that there was sufficient medical evidence that, had the Testator been a patient of his, he would have investigated for the possibility of dementia or even Alzheimer's. However, Dr. Uskavitch testified that he could not affirmatively conclude that the Testator had any neurological aliment. Furthermore, Dr. Uskavitch did not give an opinion concerning the Testator's mental status at the time he drafted the will. Dr. Uskavitch's testimony was rebutted by the Proponent's witnesses Lampley, Williams, Cline and McClanahan. As discussed above, these witnesses testified that the Testator was of sound mind around the time of the execution of the will. Moreover, the Proponent offered the testimony of Dr. Allen Naftilan, the Testator's cardiologist during 1997 and 1998. Dr. Naftilan saw the patient on December 5, 1997 and again on January 19, 1998. Dr. Naftilan stated that, during both of these office visits, the Testator was completely normal mentally and that he did not observe any confusion or other sign of mental abnormality. From the record, we cannot say that the evidence preponderates toward a finding that the Testator suffered from dementia and/or cognitive impairment that would have negated his testamentary capacity.

For the foregoing reasons, we affirm the judgment of the trial court and remanded for such further proceedings as may be necessary. Costs of the appeal are assessed to Appellants, Clifford W. Russell and John H. Russell, and their respective sureties.

_____

W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.